[Crim. No. 1498. In Bank—December 13, 1909.]

## THE PEOPLE, Respondent, v. THOMAS R. ARGENTOS, Appellant.

CRIMINAL LAW—MURDER—EVIDENCE OF DISTINCT OFFENSE—MOTIVE.— Upon the trial of a defendant charged with murder, evidence that he had been previously charged with a distinct offense, which had a direct bearing upon the question of motive for the crime charged, was properly admitted.

ID.—EXCEPTION TO GENERAL RULE.—The general rule that upon trial for one crime, evidence to show a distinct crime is inadmissible, and that its admission is prejudicial error, is subject to the exception that where the commission of such other crime has a logical bearing upon the question of the guilt of the accused as to the crime charged, evidence of the commission of such other crime is admissible.

ID.—RULE AND EXCEPTION APPLICABLE TO ACCUSATION OF DISTINCT OFFENSE.—Both the general rule and the exception apply as well to the accusation of a distinct offense, as to the actual commission thereof, so far as concerns the question of prejudice to the defendant under the general rule, or the question of motive or guilt under the exception thereto.

ID.—RELEVANT EVIDENCE OF DISTINCT CHARGE.—Upon the trial of·a criminal case, any fact or circumstance which is in any degree relevant to a material fact in issue, is admissible, notwithstanding it may tend to prove the accused guilty of another offense, and thereby tend to prejudice him before the jury. Proof of the commission of another ‘crime is admissible where it tends to show the motive for the crime in question.

ID.—MOTIVE OF HOMICIDE—SURETYSHIP ON CRIMINAL BOND—PREVENTING WITHDRAWAL—SECURITY BY MINES NOT OWNED—PRETENDED INSPECTION.—Evidence that the deceased became surety on the bond of the defendant on a criminal charge, and that to prevent his withdrawal defendant had agreed to secure him with mines in Death Valley, in Inyo County, which he did not own, and induced defendant to go there under pretense of inspecting the same, and that defendant's dead body was there found pierced with bullets, was admissible to show a motive on the part of the defendant to commit the homicide.

ID.—CIRCUMSTANTIAL EVIDENCE—MATERIALITY OF MOTIVE.—In a case where the identity of a person who commits a crime is attempted to be proved by circumstantial evidence, evidence of a motive on the part of the defendant charged, is admissible, and is particularly material.

ID.—WEIGHT OF PROOF OF MOTIVE—QUESTION FOR JURY.—The weight of the proof of motive is a question for the jury, but cannot affect the question of its admissibility, though it tended to prejudice the defendant in the minds of the jury.

ID.—EVIDENCE—IDENTITY OF PISTOL OF DECEASED PAWNED BY DEFENDANT.—Evidence was clearly admissible to show that a pistol pawned by the defendant was identical with one owned by the deceased.

ID.—INSTRUCTION AS TO MOTIVE.—*Held,* that an instruction as to motive, though somewhat argumentative in giving the reason as to rule concerning the proof of motive, correctly stated the rule, and did not charge the jury as to any matter of fact nor assume that there was any particular motive nor assume any fact from which motive might be inferred, nor involve the discrediting of any testimony for the defendant, nor assume the existence of any fact the existence of which was to be determined exclusively by the jury.

ID.—INSTRUCTIONS TO BE CONSTRUED TOGETHER.—The instructions to the jury, as a whole, are to be construed together in determining whether a particular instruction is objectionable; and if, taken as a whole, the instructions correctly state the law, and are sufficiently explicit so that a jury of ordinary intelligence would not be misled by them, or become impressed with the view that the court was intimating that it believed any fact to be established by the evidence, then the instructions are not susceptible of criticism.

ID.—INSTRUCTIONS AS TO MOTIVE QUALIFIED BY CHARGE.—Taking into consideration the charge of the court as to the subject of motive, coupled with other instructions, particularly where the court announces the rule as to the respective duties of the court and jury, it is clear that no intelligent jury could have understood the court, in the face of its express denial of any right or intention to do so, as implying, in its instructions as to motive, any dis-

CLVI Cal.—46

credit of defendant's testimony, or that the court was assuming
that defendant had feloniously killed the deceased, or that motive
on his part for doing so was proven, or that any motive had at
all been proven.

APPEAL from a judgment of the Superior Court of Inyo
County and from an order denying a new trial. Walter L.
Lamar, Judge.

The facts are stated in the opinion of the court.

P. B. Forbes, and Wm. J. Clark, for Appellant.

U. S. Webb, Attorney-General, and George Beebe, Deputy
Attorney-General, and J. Charles Jones, for Respondent.

LORIGAN, J.—The appellant was charged with the crime
of murder, convicted of murder in the first degree, sentenced
to imprisonment for life, and appeals from the judgment and
order denying his motion for a new trial.

Reliance for reversal is based exclusively on certain rulings
of the court; on the admission of testimony and the giving of
a particular instruction asked by the people, with respect to
all of which it is claimed the trial court erred. No point is
made as to the sufficiency of the evidence to sustain the ver-
dict, so that only a summary of the evidence need be given.

The defendant and the deceased, John Pavlovich, friends
and engaged in the occupation of prospecting for mines, were
together in Goldfield, Nevada, and in the early part of July,
1907, departed together for Inyo County in this state, ap-
parently for the purpose of visiting certain mining claims of
which defendant claimed to be the owner. Sometime prior
to their departure the defendant had been arrested for an
offense, the nature of which the record does not disclose, and,
as security for his appearance, the deceased had gone on his
bond under an arrangement between them that the defendant
should convey to the deceased some mining claims which he
asserted he owned in Death Valley; that it was for the pur-
pose of examining these claims that the defendant and the
deceased left Goldfield for Inyo County, the deceased having
stated to the defendant that if he could not show him these
claims as agreed he would bring him back to Goldfield and

withdraw from his bond. The two left Goldfield on a freight train on the 9th or 10th of July, getting off at a place called Bonnie Claire, or Montana station, where they remained all night. They had breakfast the next morning at a hotel kept by Mrs. Mitchell and, having borrowed a mule and cart from her, proceeded to a place called the Steininger Ranch, in a lease of which the defendant appears to have been interested. They sent back the mule and cart borrowed from Mrs. Mitchell and remained all night at the Steininger Ranch with a relative of the defendant. The next day about noon, having obtained another mule and cart from the Steininger Ranch and provided themselves with provisions, they started apparently on a prospecting trip in the direction of Scotty's camp, located on the edge of Death Valley. About five o'clock the next morning one of the men on the Steininger Ranch, from which the mule and cart had been procured, found the mule attached to the cart standing outside the ranch corral with no one in charge. Neither the defendant nor Pavlovich returned to the ranch and the latter was not again seen alive. On July 12, 1907, between eleven and twelve o'clock, John Astley, the keeper of a hotel on the desert about a mile from Bonnie Claire or Montana station, saw the defendant coming alone and on foot towards the hotel from the direction of Death Valley. He stopped at the hotel for a short time, where he exhibited two revolvers and pledged one of them—a thirty-eight caliber Colt's—to Astley for the loan of fifteen dollars. The evidence showed that when the deceased left Goldfield with the defendant he carried on his person a thirty-eight caliber Colt's revolver. From Astley's the defendant walked to Mrs. Mitchell's hotel at Montana station, where he lunched. Mrs. Mitchell, who had known defendant and deceased for a long time, inquired of the defendant where he had left Pavlovich, to which he replied that the latter had gone prospecting for three or four days. The defendant while eating his lunch was nervous and uneasy to such an extent as to be particularly noticed by Mrs. Mitchell. That evening the defendant left Montana station for Goldfield.

On the 19th or 20th of July, 1907, a cousin of the deceased, accompanied by a friend, left Goldfield for the purpose of looking for the deceased and found his dead body on the desert near Scotty's camp at the edge of Death Valley, and

some six or seven miles from the Steininger Ranch. The body, with two bullet holes in the head and wrapped with blankets, was found a short distance from the road. It was attired only in undergarments. The outer clothing and hat of deceased, together with his pistol holster, were found at different places and some distance from the body, thrust under clusters of bushes. His pistol could not be found. In fact, without further detailing all the circumstances leading to that conclusion, it was quite evident that the deceased had been murdered apparently while he slept. A short time after the discovery of the body the defendant was arrested in Goldfield and charged with the murder of the deceased. There was no evidence that the defendant owned any mining claims in Inyo County or elsewhere. Many additional incriminatory circumstances might be stated, but as no point was made of the sufficiency of the evidence to sustain the verdict, the above statement of the main facts is all that is necessary.

The evidence against the defendant was entirely circumstantial and the theory of the prosecution was that the defendant, to induce the deceased to go upon his bond in the undisclosed criminal charge against him, falsely represented to the deceased that he owned certain mining claims in Inyo County which, in consideration of his becoming surety for him, he would deed to the deceased; that the deceased was importuning him to show him the claims and carry out his agreement, and was threatening that unless he did so he would withdraw from his bond; that in response to such importunity of deceased both he and defendant started from Goldfield for the purpose of having the defendant show the deceased these claims; that the defendant had no claims as represented and his knowledge that deceased would withdraw from his bond on the discovery of the falseness of his representations was the motive which actuated the defendant to kill the deceased.

In support of this theory the court permitted the prosecution to show certain conversations between the defendant and the deceased immediately prior to their departure from Goldfield with reference to mining claims claimed by the defendant; the fact that deceased was on the bond of the defendant for his appearance to answer some criminal charge; that defendant had agreed to convey said claims to the deceased

in consideration of his having become a surety on said bond; and that the purpose of their leaving Goldfield together was to visit the defendant's claims. The principal point made by appellant is that it was error to admit this evidence in as far, at least, as it tended to prove the commission by defendant of some other offense than the one for which he was being tried. But this evidence was not admitted with a view merely of proving that defendant had been charged with another offense. It was offered and, we think, properly admitted as bearing on the question of motive. The general rule, undoubtedly, is that upon a trial of a particular crime, evidence which shows or tends to show the commission of another and distinct crime by a defendant is inadmissible, and it is prejudicial error to let it go before the jury. This rule, however, has its exception, and where it appears that evidence of the commission of such other crime has a direct and logical bearing upon the question of the guilt of the accused as to the crime with which he is charged, evidence of the commission of such other offense is admissible.

In the case at bar it is to be observed that there was no evidence that the defendant had committed any crime other than the one with which he was charged. The evidence only was that he had given bail on an accusation made against him for some offense, the nature, of which is undisclosed by the record. The principle contended for by the appellant would, however, apply even to proof of an accusation of crime as well as proof of its actual commission, because the injury to an accused lies in the fact that proof of either actual commission, or accusation of another crime, is calculated to prejudice the defendant in the minds of the jury. But while the general rule is as contended for by appellant, still it is not inflexible. It is equally the established rule that on the trial of criminal cases any fact or circumstance which in any degree is relevant to any material fact in issue is admissible, and it, is none the less admissible because such evidence has a tendency to show him guilty of an offense other than the one of which he is charged and hence may serve to raise a prejudice against him before the jury. "Proof of the commission of another crime may be given where it tends to show motive for the homicide in question." (Wharton on Homicide, sec. 596.) The admission of such evidence is sanctioned by the

authorities in this state. (*People* v. *Suesser*, 142 Cal. 363, [75 Pac. 1093]; *People* v. *Cook*, 148 Cal. 341, [83 Pac. 43]; *People* v. *Soeder*, 150 Cal. 15, [87 Pac. 1016].)

Within the limitation to the general rule the evidence that some offense had been charged against defendant, and that deceased had gone upon his bond, given in connection with the other evidence relative to the mining claims, his agreement to convey them to deceased, the threat of the deceased to withdraw from his bond and redeliver him to the authorities; their departure from Goldfield for Inyo County and the non-existence of such mining claims, was all admissible as bearing upon the question of motive upon the part of the defendant actuating him to slay the deceased. In a case where the identity of a person who commits a crime is attempted to be proven by circumstantial evidence, such as in the case at bar, evidence of a motive on the part of a defendant charged is always a subject of proof, and the fact of motive particularly material. In proof of motive the prosecution has a right to offer any testimony which reasonably and fairly has a tendency to establish it, and we are satisfied that the evidence which was admitted by the court and of which appellant complains, was relevant to, and had a logical bearing upon, the subject. What weight that evidence might have was a question for the jury, but that it was admissible, notwithstanding it showed the defendant was charged with some other offense than the one for which he was being tried, and though its tendency might have been to prejudice him in the minds of the jury, is not, under the authorities, open to question. (*People* v. *Sanders*, 114 Cal. 216, [46 Pac. 153].)

With respect to the only other point made as to the admission of testimony. A witness was permitted to testify over the objection of defendant that the pistol pawned by the defendant to Astley resembled the one which he saw in the possession of deceased just before his departure with defendant from Goldfield, and he further testified that he could point it out if placed among fifty others. The evidence elicited in these replies went to the proof of the identity of the pistol, and that there was no impropriety in asking the questions appears so plain that it would be idle to discuss the subject.

As to the instruction complained of. The court instructed the jury on the subject of motive partially as follows:—

"You are instructed that, with regard to the grounds from which motive may be inferred, the law has never limited them; therefore, it is immaterial whether the motive be hatred, wealth, or in gratification of desires or passions, or arising from any other cause, so long as the motive exists; you must bear in mind that motive, being an auxiliary fact from which, if established, in connection with other necessary facts, the main or primary fact of guilt may be inferred, it may be established by circumstantial evidence the· same as any other fact in the case. If the motive of a party in committing a crime has been declared by him, or direct evidence can be given of it by the prosecution, then such proof would be admissible; but the law does not require at the hands of the prosecution any direct affirmative proof of the motive of any person committing crime, and one of the reasons for this rule, among others, is that the individual whose motive is sought to be ascertained may remain silent, or if he speaks and has a crime to conceal, may speak untruly, and thus our minds are compelled from necessity to revert to the actual physical manifestations of the motive exhibited by the results produced, as the safest, if not the only, proof of motive. Therefore, in determining the question of presence or absence of motive in the commission of crime, it is in accordance with our general observation and experience to infer motive by reference to the laws which have been generally and usually found to control human conduct. This rule is based on sound reason and universal experience."

Taking this instruction on the subject of motive as standing alone, the appellant contends that in giving it the court violated section 19 of article VI of the constitution prohibiting judges from charging juries as to matter of fact, the specific claim being that it is in effect an instruction to the jury to disregard the testimony of the defendant; that it directly assumes the agency of defendant in the death of Pavlovich, and tells the jury to infer robbery as a motive to account for that fact; that it informs the jury that the body of Pavlovich is actual physical manifestation of the motive of defendant and a result produced thereby.

It is proper to state here, as bearing on the claim of the appellant that this instruction tells the jury to infer robbery as a motive for the killing, that there was evidence in the

case that about the time Pavlovich and defendant left Gold-field together the former was in possession of some money—not a very large amount—none of which was found in his clothing or about him when his dead body was discovered, and, inferentially, it appeared from the evidence that defend-ant, when they started from Goldfield, had no money. Aside from this there was evidence that deceased was in possession of a Colt's revolver when he left Goldfield, which could not be found when his body was discovered.

Recurring now to the instruction. The particular portion of the instruction which appellant criticises is that part where the court, after declaring that direct affirmative proof of motive need not be given, proceeds to assign as one of the reasons for this that the individual, whose motive is sought to be ascertained, may remain silent, or, if he speaks, may speak untruly, and hence resort must be had to the actual physical manifestations of motive exhibited by the results produced as the safest, if not the only proof of motive.

The defendant was sworn as a witness in his own behalf and testified that he left the Steininger Ranch about three o'clock on the morning of the second day after the arrival of deceased and himself there to go to Goldfield to bring another man to the ranch; that he did this at the request of deceased, and left the latter at the ranch when he departed for Goldfield.

In the light of this evidence, and the further proof of the disappearance of the revolver and money of deceased, it is insisted by appellant that the giving of this portion of the instruction was erroneous and highly prejudicial to the de-fendant. The argument is that the question whether the deceased was killed by defendant was to be determined from circumstantial evidence alone, and under such a condition of the evidence the absence of any motive on his part for the killing was a circumstance in favor of his innocence; that the presence or absence of motive and the circumstances from which it was to be determined were matters exclusively for the consideration of the jury; that the court in instructing the jury that an individual whose motive is sought to be ascertained may remain silent, or, if he speaks, being accused of crime, may speak untruly, told them in effect that they were to discredit the testimony of defendant in his denial of

responsibility for the death of the deceased, and were to look to the actual physical manifestations of motive exhibited by the results produced. As to this latter part of the instruction it is insisted by appellant that the jury were told by it that there was in fact a physical manifestation of motive on the part of defendant exhibited by results produced proven in the case—a matter exclusively for the jury to determine—and was in effect an instruction that these physical manifestations exhibited by results produced showed that the defendant killed the deceased in order to rob him.

We are not particularly impressed with the reasoning whereby the appellant reaches the conclusion that the constitutional provision against the court charging a jury as to matters of fact has been violated by the giving of this particular instruction. As we look upon it, and as the jury must have understood it, it was entirely impersonal. It was a general instruction—not as lucid as it might be when addressed to "actual physical manifestations" and "results produced"—in which the court was defining the method whereby motive might be arrived at in cases of homicide where the evidence was purely circumstantial. In reality, a fair view of what the court was endeavoring to impress upon the jury is that there was no fixed rule by which the presence or absence of motive could be ascertained, but it was to be determined by a consideration of those laws which generally influence or control human conduct—in other words, a jury in considering the matter should be governed by the results of experience and the application of common sense. It is true the court in the instruction refers somewhat to the reasons why, in the end, motive or want of motive must be settled by a reference to the rules of human conduct, and in that respect may be open to the criticism that it is argumentative, but we do not think its character as laying down a general rule on the question of motive is open to the objection that it assumes any fact exclusively for the determination of the jury, or that it is directed to any particular circumstance in the case, or that any inference could be drawn by the jury from it prejudicial to the defendant. It was proper for the court to instruct the jury on the subject of motive, and the instruction appears to us to have been but an abstract declaration on the subject, without reference to or comment

on any particular circumstance in the case. It does not assume that there was a motive nor does it assume the existence of any fact from which motive may be inferred. As an element in the crime of murder proper for consideration by the jury, it suggested a rule which might be adopted for ascertaining the existence or non-existence of motive, and while a statement of the general rule to the jury would have sufficed, we cannot perceive how, with any plausibility, the incorporation of the reasons for the rule in the instruction can be said to have amounted to a discrediting of the testimony of the defendant by the court, or an assumption on its part of the existence of any fact, the existence of which was to be determined exclusively by the jury.

In support of his attack on this instruction, counsel for appellant relies particularly on the cases of *People* v. *Hoff*, 129 Cal. 497, [58 Pac. 156; 62 Pac. 111], and *People* v. *Enright*, 134 Cal. 527, [66 Pac. 727], both cases where it was held that an instruction given relative to motive was erroneous. It is claimed by appellant that there is no difference between the instruction now under consideration and the instructions held erroneous in the cases cited. There is, however, this radical difference: In both the cases cited the instruction was substantially the same, and practically informed the jury that they would be warranted in finding a motive for the conduct of the defendant without any proof whatever, which was clearly pointed out in the cases to be erroneous. In the instruction at bar the jury are not so informed. They are instructed that motive may be established by direct affirmative proof or inferred from circumstantial evidence and that in inferring motive they may take into consideration those rules which are found to usually influence human conduct.

But assuming that the instruction standing alone might be open to the objection which appellant urges against it, still it is quite evident when all the instructions given to the jury are considered, that the court in the instruction criticised did not intend to imply that the testimony of defendant should be disregarded by the jury, nor did it assume that defendant had killed the deceased and that his motive for doing so was robbery, or that by reason of the language used in the instruction the jury could have understood the court

as intimating a belief as to any of these matters or in any other respect.

In determining whether a jury has been correctly instructed it is not proper to take into consideration an isolated portion of an instruction or a single instruction alone, but resort must be had to the entire charge. It is to be assumed that the jury in considering a case have in mind the instructions of the court as a whole, and, if examined as a whole, they correctly state the law and are sufficiently explicit so that a jury of ordinary intelligence would not be misled by them, or become impressed with the view that the court was intimating that it believed any fact to be established by the evidence, then the instructions are not susceptible to criticism.

Now, while appellant directs his complaint against that portion of the instruction which we have been examining, he does not give due consideration to this rule which requires an examination of the entire charge, and overlooks the fact that immediately following the instruction which he attacks the court gave a further instruction as to motive which in reality was a continuation of the instruction criticised. The court said: "When the evidence fails to show any motive to commit the crime charged on the part of the accused, it is a circumstance in favor of his innocence. And, in this case if the jury finds by careful examination of all the evidence that it fails to show any motive on the part of the accused to commit the crime charged against him, then this is a circumstance which the jury ought to consider in connection with all the other evidence in the case in making up their verdict." It is clear when the two instructions are read together that the court was not assuming anything as to motive, or giving any intimation as to its belief of the agency of the defendant in the killing of deceased or the existence on his part of any motive for his doing so. It is apparent when this last instruction is taken into consideration with the criticised instruction of which it is a part, the jury could have understood nothing else therefrom than that the court was instructing them on the subject of motive as an element in the crime of murder, leaving to them exclusively the determination from the evidence whether it was proved in the case or not.

Aside from this the court, among other instructions, further instructed the jury fully, as is customary, on the presump-

tion of innocence; the doctrine of reasonable doubt; the necessity of the prosecution proving every fact essential to establish guilt beyond a reasonable doubt, or failing this, that defendant was entitled to an acquittal; on the subject of direct and circumstantial evidence, and that where the latter is relied on for a conviction it must exclude to a moral certainty, beyond a reasonable doubt, any other hypothesis except the guilt of defendant, or the jury must acquit him. The jury were also told at the request of defendant that the defendant had a right to testify in his own behalf or not, or to testify so far and to such facts as he saw fit, and any omission or failure on his part to testify to any facts, or particular fact, must not be considered as a circumstance against him, or be considered by the jury at all. At the very beginning of the charge the jury were told that the duty of the court was simply to instruct them on the general principles of law and that they were to distinctly understand "that the court in no manner or form was expressing, or desires to express, any opinion on the weight of the evidence, or any part of it, or on the truth or falsity of any witness's testimony, or that any alleged fact in the case is, or is not proved. With questions of fact, the weight of the evidence, the credit you should give to any witness sworn, the court has nothing to do. These are matters entirely within your province, and which you as jurors, under your oaths, must determine for yourselves." This principle of the exclusive right of the jury to determine what facts were or were not proven, the weight of the evidence and the credibility of witnesses, was subsequently reiterated during the giving of the charge.

Taking into consideration the entire charge of the court on the subject of motive, coupled with the other instructions, particularly the one we have last quoted, where the court announces the rule as to the respective duties of the court and the jury, and it appears quite clear that no intelligent juror could have understood the court in the face of its express denial of any right or intention to do so, as implying in the instruction on motive that the testimony of the defendant was to be discredited or that the court was assuming that defendant had feloniously killed the deceased, or that motive on his part for doing so was proven, or that any motive had at all been proven.

This case, in its general features as to instructions, is similar to the case of *People* v. *Besold,* 154 Cal. 363, [87 Pac. 871]. The particular instruction there criticised was one given on the matter of intent, it being claimed that as given the court assumed that defendant, who was being prosecuted for murder, had killed the deceased. It was held that on an examination and consideration of the entire charge given to them the jury could not so have understood the court as intimating. The rule is there fully discussed and clearly declared (the authorities in support of it being collated) to the effect that in determining whether the law has been properly declared to a jury in any particular case, the charge as a whole must be considered. Applying this rule to the case at bar as it is declared in the Besold and other cases, we are satisfied that the claim of defendant that the court was assuming any fact as proven in its instruction on motive, if the instruction itself examined alone was susceptible of such criticism, is plainly untenable upon a consideration of the entire charge of the court.

The judgment and order appealed from are affirmed.

Melvin, J., Angellotti, J., Shaw, J., Sloss, J., and Henshaw, J., concurred.

Rehearing denied.