[Crim. No. 3264.   Second Appellate District, Division Two.—October 20, 1939.]

THE PEOPLE, Respondent, v. ROBERT C. SANCHEZ, Appellant.

W. P. Butcher for Appellant.

Earl Warren, Attorney-General, Burdette J. Daniels, Deputy Attorney-General, Percy C. Heckendorf, District Attorney, and Lawrence M. Parma, Deputy District Attorney, for Respondent.

MOORE, P. J.—Defendant appeals from a judgment of conviction upon two counts of burglary and eight counts of petty theft after prior convictions (secs. 666, 667, Pen. Code) and from an order denying his motion for a new trial.

He bases his appeal upon the following grounds, namely: (I) that the evidence is insufficient to establish any crime by defendant; (II) that the statutory instruction on flight was improper; (III) that said statute is unconstitutional; and (IV) that failure to prove the exact times of the crimes deprived him of his alibi.

The apartments burglarized were those of the McDuffie family and the apartment occupied by Misses Schmidt, Redford and Johnston; while the acts of petty theft without entry were the taking of certain articles from the premises of one Mrs. Kohrs. All of the victims resided in the city of Santa Barbara.

I. The evidence proves both burglaries and thefts as well as the identity of the defendant as the transgressor. On the 24th of December, 1938, at noon, the McDuffies left their home and returned at 9 P. M. on the night of the 26th. At the time of leaving, Mrs. McDuffie left in her bedroom chest a nightgown and a girdle. She locked her doors securely, drew down the shades, left a bathroom window open with threads stretched across the aperture. No permission was given to enter their home or to take any of their belongings. On their return, they found the blinds were up, said threads broken, the chest of drawers open, and her said apparel gone.

During the absence of the McDuffies, Mr. and Mrs. Groom and Mrs. Sherrill, residents of the same court, on observing

the back door ajar, entered the McDuffie apartment on December 25th at 11 A. M., found the conditions above described, windows and screens partly open and the bathroom window up. These facts timed the burglarious entry between noon of December 24, 1938, and 11 A. M. on December 25th.

With reference to the Schmidt burglary, the three ladies occupied the apartment; no one had keys but themselves. Miss Schmidt owned a brassiere-panties set which she left under the Christmas tree Monday, December 26th, at 3:45 P. M., to absent herself until 11 P. M. No one was given authority to enter the apartment or to take the movables of any one of them. Upon her return, she found her co-occupants and four friends present. No one of these had taken anything. But Miss Schmidt discovered her brassiere and panties missing and Miss Redford's stockings gone.

As to the Kohrs' theft, on November 27, 1939, she had laundered her miscellaneous underwear and lingerie and hung it outside on the clothes line. No one had permission to remove the articles but, on the following morning, her brassiere-panties combination and hose had been taken. No wind had blown with sufficient force to remove them during the intervening night.

On December 31, 1938, as defendant emerged from his apartment with two bundles under his arm and a black bag in his hand, he observed Police Officer Riggs approaching him. He immediately dropped his burden, ran, with the officer in pursuit, and disappeared. Later apprehended, he was by the officers confronted with said stolen articles just removed from said abandoned packages and bag. No protest was uttered or remonstrance made by him; he had fled at the approach of the officer; he was now silent in the face of accusation. He had suffered former convictions for burglary and for the stealing of similar articles of ladies' apparel. Said two burglaries had occurred within a week prior to his arrest and the petty thefts all occurred within less than one month. At the McDuffie and Schmidt premises, he left articles of value untouched, taking only the under-garments of women.

■ (1) The evidence is ample to prove the crime. It is not necessary that eye witnesses to a burglary testify in order to warrant a conviction. Burglary is practically always committed in the absence of the occupants or while they sleep. It must, in such cases, be proved by circumstances. After

proof of entry, the sufficiency of the incriminating circumstances is a question which belongs exclusively to the jury. (*People* v. *Willison*, 116 Cal. App. 157 [2 Pac. (2d) 543]; *People* v. *Rodway*, 77 Cal. App. 738 [247 Pac. 532].) Evidence detailing the above summary was received and it is sufficient.

■ (2) The evidence amply proves the prisoner was the thief. An accusation of crime calls for a reply even from a person in the custody of an officer. (8 Cal. Jur. 103.) The weight of such statements or of silence is a matter for the jury. (*Ibid.*) Such behavior has many times been accepted as tending to prove the guilt of the party. (*People* v. *McCoy*, 127 Cal. App. 195 at 200 [15 Pac. (2d) 543]; *People* v. *Shelest*, 62 Cal. App. 213; *People* v. *Schoon*, 177 Cal. 678 [171 Pac. 680]) and this is true even though the defendant stands mute upon advice of counsel. (*People* v. *Graney*, 48 Cal. App. 773 [192 Pac. 460].) The disposition of a guilty conscience to shield itself by flight from lawful authority is so universally recognized that a man of ordinary understanding will infer probable guilt upon mere proof of silence when accused. His abandonment of the stolen goods to commence his flight, his unexplained possession, his scheme and his motive—all justify the jury's finding of his guilt. (*People* v. *Morris*, 124 Cal. App. 402 [12 Pac. (2d) 679]; *People* v. *Golembiewski*, 25 Cal. App. (2d) 115 [76 Pac. (2d) 717].)

■ (3) Also, the finding of burglarious intent as well as of defendant's identity as the burglar are fully justified. The robberies of both apartments and the capture of defendant with the stolen goods within a week, with no explanation "upon a theory inconsistent with his guilt" are facts which, when believed, warrant the conviction of burglary. (*People* v. *Morris, supra; People* v. *Golembiewski, supra.*) His selections of the undergarments of women from three separate localities and leaving in the burglarized home things of value, taken with his prior convictions of stealing similar articles, indicate a sexually perverted nature and marked him definitely to the jury as the offender. (*People* v. *Randolph*, 133 Cal. App. 192 [23 Pac. (2d) 777]; *People* v. *Willis*, 70 Cal. App. 465 [233 Pac. 812]; *People* v. *Kelley*, 208 Cal. 387 [281 Pac. 609].) "Where the identity of a person who commits a crime is admitted to be proved by circumstantial evidence,

such as the case at bar, evidence of a motive is the subject of proof and the fact of motive particularly material." (*People* v. *Argentos,* 156 Cal. 720, at 726 [106 Pac. 65].)

It is true that possession of stolen goods might be reconciled with innocence of a burglarious entry, but in view of his three thefts in thirty days, his possession, his flight, his silence after apprehension, and of the nature of the articles, no doubt remains of defendant's guilt. At least it was a logical deduction for the jury from the facts proved. (*People* v. *Willison, supra; People* v. *Brandon,* 134 Cal. App. 550 [25 Pac. (2d) 485]; *People* v. *Cascino,* 137 Cal. App. 73 [29 Pac. (2d) 895]; *People* v. *Getzoff,* 139 Cal. App. 721 [34 Pac. (2d) 773]; *People* v. *Brown,* 139 Cal. App. 7 [33 Pac. (2d) 843].)

The cited case of *People* v. *Barry,* 94 Cal. 481 [29 Pac. 1026], is not in point. Barry had entered a public store in broad daylight, during business hours. A proffered instruction that a person's attempt to steal while in a building is not sufficient to. cast upon him the burden of proving his innocence of burglarious intent, was erroneously denied. Nothing there can be assimilated to the facts here where the jury has convicted the defendant on the facts above summarized. Clandestinely and in the nighttime, all occupants absent, he had entered homes and secret places, taken garments and kept them to the day of his apprehension.

█ (4) Defendant's contention that the stolen articles were not specifically identified vanishes in the presence of proof. The witnesses, in their turn, identified them by the color of the material, by torn and mended places, by matching them with other articles at home, by the quality of the lace, the size of the article, the combination of brassiere and panties, and worn elastic. The positive recognition by the victims of the stolen property was sufficient. (*People* v. *Frahm,* 107 Cal. App. 253 [290 Pac. 678]; *People* v. *Kuhl,* 28 Cal. App. (2d) 471 [82 Pac. (2d) 715].)

█ (5) Surely the contention that petty theft is not shown needs only the suggestion that the total value of all articles stolen from the three places taken together had a value of less than twenty dollars.

█ II. The court read to the jury the instruction in section 1127c, Penal Code, as follows: "In any criminal trial or proceeding where evidence of flight of a defendant is relied upon as tending to show guilt, the court shall instruct

the jury substantially as follows: The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not sufficient in itself to establish his guilt, but is a fact which, if proved, the jury may consider in deciding his guilt or innocence. The weight to which such circumstances is entitled is a matter for the jury to determine."

The argument is made that this instruction was error on the ground that it does not take into consideration other circumstances in connection with the alleged crime or the question as to whether or not his flight was explained, and invades the province of the jury.

Since there was ample evidence to warrant a flight instruction, the court was required to give it. Moreover, the fact that his flight was from the presence of the threatening police and not from the looted premises does not diminish its efficacy as evidence or reduce its weight as proof. The world was unconscious of his presence as he executed his crime. He had no fears of detection then. Refuge was his need only when his safety was threatened. Knowing a crime had been committed, "no other inference can be reasonably drawn from the evidence but that he knew he would be charged". (*People* v. *Erno,* 195 Cal. 272 [232 Pac. 710].) The presence of the minions of the law calling upon an evildoer to stop is as potent as any formal accusation inscribed upon parchment. Immediate flight in the absence of any formal accusation may afford persuasive evidence of a consciousness of guilt. (*People* v. *Campos,* 10 Cal. App. (2d) 310 [52 Pac. (2d) 251].) ▮ Therefore, since an instruction was required, the language of 1127c of the Penal Code was "the only instruction permitted by the section". (*People* v. *Madison,* 3 Cal. (2d) 668 [46 Pac. (2d) 159].) Neither does it invade the jury's province. (*People* v. *Hansen,* 130 Cal. App. 217 [19 Pac. (2d) 993] ; *People* v. *Campos, supra.*) It left all questions of fact solely for the jury. (*People* v. *Blake,* 129 Cal. App. 196 [18 Pac. (2d) 399]), and did not assume the guilt or flight of the accused. It must be presumed that the jury followed the law as presented and, therefore, if flight was not proved, it was not considered in reaching a verdict. Otherwise the appellate courts would be constantly burdened with the duty of weighing the evidence and reaching a determination upon

the facts which the law has peculiarly vested in the juries and in the trial courts. Furthermore, if it had been erroneous, it caused no prejudice. (*People* v. *Lee Nam Chin*, 166 Cal. 570 at 573 [137 Pac. 917]; *People* v. *Erno*, *supra*.)

III. The contention that said section is invalid is not upheld. In the absence of constitutional restraints, the legislature speaks with the voice of sovereignty. No language of the fundamental law is cited and none is known to inhibit a statute reasonably prescribing language for an instruction. The guarantees of the right of trial by jury were never construed to mean that the courts are not to govern the conduct of trials or that the legislature is not allowed to enact substantive law or that it cannot frame the language with which to clothe the law for its presentation to a jury. The challenged instruction "states the law", (Const. art. VI, sec. 19) forbids the jury to convict upon flight alone, and allows flight to be considered; but requires it to be proved and leaves its weight to the determination of the jury. As an instruction, it has been many times approved. (*People* v. *Campos*, *supra*; *People* v. *Hansen*, *supra*; *People* v. *Ross*, 115 Cal. 233 [46 Pac. 1059].)

IV. Finally, the evidence clearly fixed the time of the burglaries within such narrow compass that an alibi could have been readily established if one had been available. It is not necessary "to allege or prove the exact date" upon which an offense was committed except in cases where the date is material. (*People* v. *Jones*, 76 Cal. App. 144 [244 Pac. 101]; *People* v. *Ephraim*, 77 Cal. App. 29 at 37 [245 Pac. 769].) Defendant made no effort to prove his whereabouts during the *interim* between the departure and return of the McDuffies or the Schmidt, Redford-Johnston trio, nor did he disclose his whereabouts on the night of November 27th when the Kohrs' clothes line was robbed.

The judgment and order are affirmed.

Wood, J., and McComb, J., concurred.