399 P.2d 719

**The STATE of Arizona, Appellee,**

**v.**

**Eugene SIMPIER, Jr., Appellant.***

**No. I CA–CR 3.**

Court of Appeals of Arizona.
March 10, 1965.
Rehearing Denied April 7, 1965.
Review Denied May 4, 1965.

Robert W. Pickrell, Former Atty. Gen., by Stirley Newell, Asst. Atty. Gen., Darrell F. Smith, Atty. Gen., by Gary K. Nelson, Asst. Atty. Gen., for appellee.

Struckmeyer & Whitney, by Harold E. Whitney, Phoenix, for appellant.

DONOFRIO, Judge.

Appellant Eugene Simpier, Jr., was convicted of the offence of Burglary, first degree and sentenced to serve a term of not

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 1232. The matter was referred to this Court pursuant to Section 12–120.23 A.R.S.

less than one nor more than three years in the State Prison.

On this appeal he contends that the Court erred in refusing to allow him to produce evidence of his earnings, bank accounts, and financial worth at or about the time of the alleged commission of burglary. He contends that such evidence would tend to show lack of motive and therefore was admissible for the reason that the evidence against him was wholly circumstantial.

The pertinent facts are as follows:

Two young ladies who will hereinafter be referred to as Pat and Linda, shared an apartment, one of several in a row, at 621 No. 6th Avenue, Phoenix. After spending Saturday evening with another girl friend visiting several places and drinking, they returned to the apartment after midnight. They sat around and talked for a while until about 2 A.M. on Sunday morning, after which the girl friend left and the two girls sharing the apartment remained. Sometime after that they both fell asleep in their clothes. One of the girls, Pat, fell asleep on the couch in the front room while listening to a record player. Pat testified that the door to the apartment was closed. She testified that something touched her leg and that she awakened and at that time saw a man opening and walking out of the front door which was approximately four or five feet away. She noticed he had on dark trousers and a light grayish blue jacket or sweater. She did not see the man's face but noticed that he had dark hair, fairly long, and combed back in a ducktail style. The man did not look back as he left. She then got up and went to her roommate, Linda, who was in the bedroom and told her that a man had been in the apartment. Linda got up and closed the door, and then recalled that she had heard the rattling of things as though someone were going through her purse. She then looked into both their purses and found their money was missing. The young ladies then knocked on the wall of the adjoining apartment which was occupied by four young men playing cards. The men came over

and while they were in the front room talking, one of the men who was looking out of the apartment exclaimed "There he is", and all four men started running after someone who had been standing by a nearby hedge. Two of the young men immediately chased the man towards Roosevelt Street and later tackled him in front of a restaurant on 7th Avenue. There was some commotion there, and the witnesses varied as to whether the defendant was beaten or merely subdued. The restaurant operator told them to leave the premises, which they did holding the defendant's arm behind his back. The young men then took defendant back to the apartment. He was wearing dark pants and a bluish gray jacket or sweater, and was identified by Pat. One of the men asked defendant "to give the girls their money". Defendant denied taking any money. They asked him what he was doing outside of the house by the hedge and he stated that he went there to urinate.

According to witnesses he offered to give them $12.00 to stay out of trouble, although he denied the accusation of taking the ladies' money. When one of the men threatened to call the police, Pat testified that defendant admitted taking the money and stated that he had left it out in the alley.

The police had been summoned and later appeared at the apartment. One of the officers picked up $12.00, a pen knife and a flashlight from on top of T.V. set. They later took defendant outside and searched him finding a glove. During the time they were outside one of the officers testified defendant threw something behind his back. It turned out to be $36.00 in currency. There was some discrepancy between the amount that Pat stated she lost when she testified at the Preliminary Hearing and what she stated she lost when she testified at the trial. The ladies also gave different stories as to where they had been that night. At the Preliminary Hearing they denied drinking, and at the trial they testified to drinking and explained that they were told they would get into trouble be-

cause of their age if they testified that they had liquor at any of the places that night.

The defendant testified he left home around 9:00 o'clock Saturday night with approximately $125.00 on his person. He drank at various places in the neighborhood, and at 1:00 o'clock he walked a lady to a nearby restaurant and then to her apartment near Fillmore and First Avenue. He started back to where his car was parked on Sixth Avenue near Roosevelt. As he passed the apartments where the complaining witnesses lived he was stopped by a man who had been drinking. The man told him that there was a party going on in the row of apartments and suggested "you might be able to make out" referring to girls. He testified he went to the front door of one of the apartments where he heard a phonograph playing loudly and saw one girl lying in the front room of the apartment. He yelled but there was no answer. He did not go into the apartment but turned around and walked to the front. He had to urinate so he went to a hedge and while there was assaulted and chased. He ran to his car, noticed his wallet was missing so he got his flashlight and started back to look for his wallet. He was encountered again by the men who jumped him. They chased him down an alley and to the restaurant on Seventh Avenue; that they beat him and then dragged him back to the apartment where they accused him of taking money.

During the trial he attempted to show his earnings and wealth at the time of the alleged offense and for that purpose, attempted to introduce his bank statement and two cancelled checks he received as income. The Court did not permit this. The Court did, however, permit testimony as to defendant's employment and to the fact he was paid shortly before the event in question, and that he had "ample funds in the bank".

The sole issue is whether the court erred in not admitting this evidence.

■ As a general proposition, well settled, it is not necessary to prove presence of motive in a criminal case, and conversely a showing of lack of motive is not a complete defense. Defendant asserts that inasmuch as the State proved their case by *circumstantial evidence* (emphasis supplied) the Jury had a right to consider facts which would show the absence of a motive on his part to commit the offense. Defendant contends that a showing of how much he earned and had in the bank at the time would tend to show this absence of motive.

We have been unable to find any authority in our State passing upon this precise question, however, defendant urges that in a California burglary case where there were no eyewitnesses and the act of burglary was shown by circumstantial evidence it was held that:

" 'Where the identity of a person who commits a crime is admitted to be proven by circumstantial evidence, * * * evidence of a motive * * * is always a subject of proof, and the fact of motive particularly material.' " People v. Sanches, 35 Cal.App.2d 231, 95 P.2d 169 (1939) quoting from People v. Argentos, 156 Cal. 720, 106 P. 65, at page 67 (1909).

While we are not prepared to state that this should be the law in Arizona, we shall, nevertheless, for the purposes of this case assume such to be the law. It then becomes necessary to analyze the evidence of the instant case to determine if it is wholly circumstantial. For if the evidence is not wholly circumstantial we need not further decide the matter.

■■ For a concise definition we quote 1 Jones on Evid. 5th Ed., § 5, page 7:

" * * * Direct or positive evidence is evidence to the precise point in issue. * * * Circumstantial evidence is that which relates to a series of facts other than the fact in issue, these circumstances having been found by experience so associated with that fact that in relation of cause and effect they lead to a satisfactory conclusion."

Also see Kinsey v. State, 49 Ariz. 201, 65 P.2d 1141 (1937).

The complaining witness, Pat, when relating part of the conversation in the apartment between the defendant and the young man Ron, who was accusing defendant of taking the ladies' money, testified as follows, referring to defendant's statements:

"And he says, 'No, don't call the heat fellows,' and all like that.

"And he said '*All right, I did take it.*' He says, 'I left it in an alley.' And he said, 'You come with me.' (Italics added.)

"Q Who did he point to when he said 'You'?

"A Ron Gray

"Q All right.

"A. 'And I will give it to you'."

The following testimony of the witness, Linda, was to the same effect:

"And he said, 'Okay, *I took it.* I threw it in an alley'. And he said 'If you will go with me, just you'—he meant Ronnie—'go with me, I will get it'." (Italics added.)

In direct evidence the information is directly upon the issue. It instantly relates to it; establishes a "yes" or "no". In circumstantial evidence the information does not relate directly to the fact in issue, but relates directly to another fact. That fact now established relates to the question in issue. An analogy between an every-day occurrence may be helpful. A mother asks her son, "Did you or did you not take the money out of my purse?" His answer, yes, or no, is direct. If she asks, "Did you buy anything today?" his answer would be circumstantial evidence as to whether or not he took the money from the purse. His answer imparts information from which something in respect to the question may be inferred.

■ Bearing this analogy in mind when evidence was introduced of defendant's statement "I did take it" it amounted to direct evidence in the case. (It is to be borne in mind that all of this evidence was admitted without objection.)

The evidence is uncontradicted that when the young ladies dozed off defendant was not in the room. Pat testified that she felt something touch her leg and woke up to see a man inside the room leaving by the door, describing what she saw of him. When defendant was brought back to the apartment within minutes of the occurrence she identified him. At the trial she testified several times that there was no question and no doubt in her mind that he was the person who was in the room and leaving.

This again is direct evidence which is specifically on the issue of entering, an essential element in the burglary charge.

We believe these two instances of evidence go directly to the essential ingredients of the burglary, namely, the entering of the apartment with the intent to commit theft therein.

■ Therefore, we find in the record legally sufficient direct evidence to warrant the refusal of the testimony offered under the theory advanced by defendant.

We have analyzed the record to see if the Court abused its discretion during the trial of the issues then presented by limiting the evidence sought to be introduced by the defendant and we cannot find abuse of discretion in the Court's ruling.

■ There was corroborative and circumstantial evidence in addition to the direct evidence. For example, Linda testified that she heard sounds as if someone were going through her purse. There was evidence that the defendant reached into his pocket and threw away money in the denominations missed by the complaining witnesses. This would call for instructions on circumstantial evidence.

We have read the record and find the Court properly instructed the jury on circumstantial evidence.

Judgment affirmed.

STEVENS, C. J., and CAMERON, J., concurring.