## GOWER *v.* THE STATE.

GILBERT, J. 1. "The time to be allowed counsel to prepare for trial is in the sound discretion of the trial judge; and his discretion will not be interfered with by this court, unless abused." *Kelloy* v. *State,* 151 *Ga.* 551 (107 S. E. 488); *Ivey* v. *State,* 154 *Ga.* 63 (113 S. E. 175). In this case no abuse is shown.

2. None of the grounds of the motion for a new trial which complain of the admission of evidence, or the refusal to rule out evidence, show error.

3. Movant complains that the verdict is not supported by evidence; that the only evidence connecting the accused with the crime was that of an accomplice. Two witnesses gave direct evidence sufficient to support the verdict. Both swore that movant was a principal in the crime. One was jointly indicted with movant; both admitted their presence. Each of these witnesses denied participation, and each swore that the other participated with movant in the homicide. The court properly submitted as an issue to the jury whether either of these witnesses was an accomplice. Mere presence at the scene of a crime does not require a finding that one is a principal. Participation in the intent and the criminal act is essential to make one an accomplice. *Lowery* v. *State,* 72 *Ga.* 649; *Allen* v. *State,* 74 *Ga.* 769; *Springer* v. *State,* 102 *Ga.* 447, 451 (30 S. E. 971); *Walker* v. *State,* 118 *Ga.* 757 (45 S. E. 608). Compare *Fudge* v. *State,* 148 *Ga.* 149 (2) (95 S. E. 980).

4. "Where the sequestration of the witnesses has been ordered by the court, and in violation of the court's order a witness remains in court and hears the testimony of the other witnesses, this does not disqualify the witness, and render him incompetent. It may subject the witness to attachment and punishment for contempt." *Wallace* v. *Mize,* 153 *Ga.* 374, 388 (112 S. E. 724), and cit. The court did not err in the instructions to the jury on this subject.

5. The ground of the motion which complains that it was, "the duty of the court" to declare a mistrial on account of the argument of the solicitor-general, even if otherwise meritorious, does not show error, because there was no motion for such mistrial.

6. One ground of the motion is as follows: "Movant contends that the court erred in charging the jury as follows: 'And if you should further believe that at the time of the killing the defendant, Sam Gower, was in no danger whatever from the person killed, and that the deceased was not committing or attempting to commit any assault upon him whatsoever, that the circumstances were *not* sufficient to excite the fears

of a reasonable man that the deceased either intended or endeavored, or was about to commit a serious personal injury at all upon the person of the defendant, but that the killing was without justification or mitigation, and as charged in the bill of indictment, then in that event it would be your duty to find the defendant guilty of murder.' Movant contends that such charge was error, because: (a) It was not adjusted to the plea of the defendant, which was alibi; (b) it was confusing to the jury, in that it placed before them matters and things to decide that were not necessary to the issue made by defendant's plea; (c) that said charge was an expression of an opinion by the court of the evidence, in that it presupposed that Sam Gower was at the Bennefield home and. did the killing. Said charge likewise amounted to the court saying to the jury: 'I don't believe the alibi defense theory set up; this man was at Bennefield's home and did the killing.' " This ground is without merit. The excerpt, considered in connection with the entire charge, is not subject to the criticism made. The court gave instructions on the law of alibi, on which no error is assigned.

7. A number of affidavits are brought up, attached to the record. They are impeaching in character as to unimportant details of the evidence. They are not made a part of the motion for a new trial, and can not be considered.

8. The verdict is supported by evidence.

*Judgment affirmed. All the Justices concur.*

No. 6586. JUNE 12, 1928.

Murder. Before Judge Stark. Gwinnett superior court. April 7, 1928.

Sam Gower and Joe Price were jointly indicted for the murder of an elderly man, Jim Bennefield. The accused were tried separately. Gower was convicted without a recommendation of mercy, and Price was convicted with a recommendation. Gower moved for a new trial on the general grounds, which were amended with special grounds. His motion was overruled, and he excepted. He also moved for a continuance on the ground that he had not been given sufficient time to prepare his defense. The motion was based upon the contention of his counsel that he had been put on trial six days after being indicted, that this was not enough for counsel to know how to advise his client or in which to familiarize himself with the general situation or the venire of jurors, or to consult the witnesses. The homicide occurred on December 16, 1927. There was a commitment trial at which the defendant was bound over to the grand jury. The indictment was returned on March 6, and the case was called for trial March 12, 1928. The defendant excepted to the overruling of his motion for a continuance, on the ground that it was violative of the constitutional provision of this State with re-

gard to benefit of counsel, copy of accusation, list of witnesses, and compulsory process (Civil Code of 1910, § 6361); and on the ground that it was also violative of the corresponding provision of the Federal constitution (Civil Code, § 6689).

LaGrande Sikes, a witness for the State, testified in substance as follows: On the day of the killing he saw Gower and Price at Gower's home, and spent most of the day there cutting wood. About 5 o'clock Gower and Price came in, and one of them told witness that he wanted witness to drive his car. Gower and Price began drinking, and about 10 o'clock witness cranked the car and they got in and drove away according to directions of Gower. Witness eventually parked the car near a garden fence, and all got out. Gower said to Price that they had to go over there and straighten up things, and that if it took killing they had it; and Price replied in the affirmative. After taking another drink they approached the home of Bennefield, stopped, took another drink, and entered by the kitchen door. Bennefield and his little boy were sitting by the fire. Bennefield asked all to be seated, which they did, and a friendly conversation began. Directly Gower pulled out a bottle and gave Bennefield a drink. Bennefield said this whisky was better than the last he bought from Gower. The boy had gone in an adjoining room and laid down on some cotton. Gower replied to Bennefield that he did not think this whisky was any better than other whisky; and an argument was started about the whisky and a still. Bennefield reached over to poke the fire, and Gower hit him on the head with a hammer. Bennefield raised up and picked up a chair and said, "You can't do me this way in my house," whereupon Gower hit him on the head again. The boy ran back in and got between Gower and his father. Gower hit the boy on the side of the head and knocked him to the floor. Gower then knocked Bennefield up against the window shutter, struck him with a chair, and knocked him to the floor. Gower pulled out a butcher knife and gave it to Price, telling him to cut Bennefield's throat. Price slashed Bennefield's throat twice. Gower turned Bennefield over and went through his pockets, finding over $600. Gower gave Price $200 and witness $200. Gower then told Price to take the boy, lay him out on the cotton, and cut his throat. "I stood there and watched him, and when he done that I liked to fell." They took their overcoats and departed. Nothing was said until the car

was reached, when Gower put the knife and hammer in the back of the car and told witness to drive by Freeman's mill-pond, which he did. Gower and Price got out at the pond and walked off, Gower having taken out the knife and hammer from the back of the car. Directly they returned and witness drove the car back home where Gower's wife opened the door. Gower gave his wife his money, but Price retained the money Gower had given him.

There was other evidence, such as the sale to Gower of butcher knives; and evidence to the effect that Gower had killed hogs prior to the homicide. The daughter of the defendant testified that Sikes was not at her father's home on the night he testified about, as her brother had carried him home on Friday morning; that on Friday night (the night of the killing as charged by the indictment) she and the defendant and her three brothers went to her sister's home, carrying their phonograph, and they had music there. Another daughter of the defendant testified about the music, and swore that music was played at the home of Alton King also, which her father attended, but which she did not attend; that "it was between ten-thirty and eleven when they got back. When my father got home he went to bed; he stayed in bed the balance of the night; I know this because me and my sister and stepmother was up off and on all night with my baby brother;" and that Sikes was not at the Gower home the night of the killing, as her brother had taken him home the morning of that day.

The defendant stated that he knew nothing of the crime; that he heard of it Sunday, and suggested to Sikes, his son-in-law, that they go and see about it, which they did; that they went to the Bennefield house, and a man took them in and showed them the two dead; that Sikes was not at his house that Friday night, though Price was; and that they went, including Price, to his daughter's home with the phonograph, leaving there at 10:30 or 11 o'clock, and returning home where they remained during the night.

Price testified he went with Gower and Sikes to the Bennefield home; that Gower, after a row started, struck Bennefield with a hammer but with nothing else; that witness ran out to see if any one was coming, and on his return saw Sikes down over old Bennefield cutting his throat; that he could not tell whether it was Sikes or Gower who killed Bennefield, but that it was Sikes who killed the little boy by cutting his throat.

*J. Mallory Hunt,* for plaintiff in error.

*George M. Napier, attorney-general, Pemberton Cooley, solicitor-general,* and *T. R. Gress, assistant attorney-general,* contra.