HULSEY *et al. v.* THE STATE.

No. 8036. June 10, 1931.

*William G. McRae,* for plaintiff in error.

*George M. Napier, attorney-general, S. W. Ragsdale, solicitor-general, T. R. Gress, assistant attorney-general,* and *Homer Watkins,* contra.

ATKINSON, J. On the afternoon of June 18, 1930, Lige Harper, Ernest McCullough, and Clifford Jones were killed by pistol shots in Polk County near the residence of William Hulsey. During the ensuing night their bodies were carried in a wagon to a secluded place several miles away, and cast head foremost into an abandoned well. On the following day the bodies were discovered, and a coroner's inquest was held. William Hulsey, his two married sons Fred and Ray, his son-in-law Tom Hicks, and L. E. McCullough were arrested and confined in jail, the two first named in an adjoining county. The next regular term of court would convene on the fourth Monday in August. On June 22 an attorney was called by telephone from Atlanta. At a conference then held it was agreed that the attorney would represent William and Fred Hulsey if an indictment should be found against them. The attorney stated at the time that he thought that if an indictment should be found against them it would be at the regular August term. On July 3 the attorney went again to see the Hulseys, at which time they informed him "there was no use employing a lawyer and paying him unless there was a bill found against them." On July 5 the judge called a special term of court to convene July 14, "for the trial of criminal business," and ordered the grand jury "sworn and serving at the February term, 1930," to reconvene on July 11 "for the disposition of such business as may come before them." On the same day the judge wrote to the attorney, informing him of the call of the special term, and stated: "If you so desire, I can have the prisoners here on Saturday the 12th inst., so that the case may be formally sounded. You will be given

all assistance at that time to have witnesses present on Monday following." The attorney was finally employed and was paid his fee on Friday, July 11. When the grand jury reconvened three true bills were returned on July 11, against William and Fred Hulsey, charging them jointly with the separate murders of Harper, McCullough, and Jones. The case for murder of Jones was called for trial on July 14, and the defendants filed their motion for a continuance to the regular August term. The motion was overruled, and the defendants excepted pendente lite. When the panel of jurors from which a jury was to be selected was about to be put upon the defendants they filed a challenge to the array. This was overruled, and the defendants again excepted pendente lite. On the trial they were both convicted and given the death penalty. Their motion for a new trial on general and special grounds was overruled, and they excepted, assigning error on that ruling and on the rulings excepted to pendente lite.

■ The grounds of the motion for a continuance were positively sworn to by both of the defendants. In one of these it was alleged substantially: "There is prevalent in this county a degree of excitement against these defendants, as a result of the extraordinary circumstances surrounding the killing of the deceased and Lige Harper and Ernest McCullough at the same time, which renders it unsafe for these defendants to go to trial at this term of court. . . The killing of these three persons aroused such extraordinary excitement in the minds of the people of this county that it influenced the calling of this special term of this court and the recalling of the February term grand jury within a few days after said homicides were committed, for the sole main purpose of placing these defendants and the other persons charged with said killings upon immediate trial before said excitement should have an opportunity to subside. . . The regular semi-annual term of this court would have convened by law on the fourth Monday in August, 1930, just six weeks after this term convened, and . . the trial of these defendants on this indictment at that term would . . serve the ends of justice. . . It is unfair to these defendants to require them to stand trial on said indictment at this term, called and held within twenty-six days after said homicides were committed, while popular excitement against them is extraordinarily great, and at a time when such popular excitement is likely . . to cause these

defendants to be convicted by a jury of citizens who have become prejudiced against these defendants as a result of widespread public discussions of the alleged circumstances of the killings in the highways and byways of the county. . . A more atrocious crime was never committed in this county than the killing of these three persons. . . The fact that three men were killed and their bodies hidden in an abandoned well would have created such an extraordinary degree of public excitement is self-evident, and that such excitement should be against these defendants because of their association with the three deceased persons immediately preceding their death was a foregone conclusion in view of the attendant circumstances involving liquor, home-brew and gambling, the shooting of these men from the rear, and the use of one of these defendants' wagon in disposing of the bodies. Defendants offer, as evidence of the extraordinary public excitement against them which makes it unsafe for them to go to trial at this term of court, certain news items and editorials which were published and widely circulated throughout this county by the Rockmart News, Rockmart, Georgia, a weekly newspaper published near the scene of the homicides, as follows: news article entitled 'Three Mutilated Bodies Found in Well,' published and circulated . . on the 19th day of June, 1930; also news article entitled 'Five Under Arrest,' said news article having been published and circulated . . on the 26th day of June, 1930; also an editorial entitled 'Menace,' said editorial having been published and circulated . . on the 26th day of June, 1930; and an editorial entitled 'Why, Of Course,' . . said editorial having been published and circulated . . on the 3d day of July, 1930. [The several articles were set out as exhibits to this ground of the motion to continue.] Defendants aver that said news articles contain matter unjustly harmful and prejudicial to the defendants, that they are villifying and untruthful, and the inferences necessarily to be drawn from them and actually drawn from them by a large number of citizens of this county eligible for service upon a jury in this court would so tend to prejudice them against these defendants that it is unsafe for them to go upon their trial so soon after the commission of said homicides and the inflaming of the public mind against them by said news articles and editorials, and has made it almost impossible for them to secure a fair and impartial trial on this charge. Defendants aver that

the principles of justice require a postponement of this trial to the August term, 1930, of this court."

There was no evidence of the existence of public excitement other than the sworn allegations of the ground of the motion. In *Maddox* v. *State,* 32 *Ga.* 581, it was said by Jenkins, J.: "It is alleged that the court below erred in refusing to continue the case, upon the showing made by the defendant. This showing presents two causes for continuance. 1st. The recent commission of the homicide charged (less than two months having elapsed between the killing and the trial), and the prevalence of a degree of excitement in the county against the accused, which rendered it unsafe for him to go to trial at that term of the court. . . This latter requisition, however, was subsequently abandoned by the court, and the continuance on this ground refused upon the authority of a decision of this court in the case of *Thompson* v. *The State,* 24 *Ga.* R. 297. (See page 303.) In that case this court held, that, since the passage of the act of 1856 providing additional and thorough tests of the competency of jurors, there was little danger to be apprehended by those charged with crime, from unfriendly excitement in the public mind, and that the existence of such excitement was not of itself a sufficient showing for a continuance of a criminal case. In the case of *Thomas* v. *The State,* 27th *Georgia Reports,* 287, it was ruled, 'that popular excitement alone is not sufficient to procure the continuance of a cause, except under extraordinary circumstances.' We are not prepared to say that the affidavit of the accused in this case shows any extraordinary degree of popular excitement, or any extraordinary circumstances likely to swell that excitement to a height beyond what usually results from homicide. Nor can we say that had this been the only showing for a continuance it should have received the favorable consideration of the court. In the connection in which it was presented, however, it was worthy of consideration. In all cases, in which this cause is superadded to others, if the court have a doubt of the sufficiency of those other causes, this one may very properly turn the scale in favor of the motion to continue, even though there be shown no 'extraordinary' circumstances. This I understand to be the effect of past rulings on this subject, and I should be very reluctant to see the force of such a showing further diminished."

In *Woolfolk* v. *State,* 85 *Ga.* 69 (3) (11 S. E. 814), it was held: "With the means afforded by law for obtaining impartial jurors, public excitement alone is not a sufficient ground for continuance, especially where nearly two years have elapsed since the commission of the crime." In the course of the opinion it was said by Simmons, J.: "There was no error in refusing to continue the case upon the ground of public excitement. The record shows that the crime was committed on August 6th, 1887. The defendant was tried first at the May term, 1888, and a new trial was granted by this court in February, 1889, and he was again placed on trial in June, 1889. Nearly two years, therefore, had elapsed from the commission of the crime, nearly one year from his former trial, and about four months from the granting of a new trial by this court, before he was again placed on trial. So it seems that if there had been public excitement against the accused, there was sufficient time for it to have cooled before this trial. But whether this be true or not, this court has held, in a number of cases, that since the passage of the act requiring jurors to be put upon their voir dire and to answer the questions set out in section 4682 of the code, supra, public excitement alone is not a sufficient ground for continuance. This was held in *Thompson* v. *State,* 24 *Ga.* 297, in which case McDonald, J., in delivering the opinion of the court, says: 'Prior to the act of 1856 in relation to the qualification of jurors to serve on the trial of persons charged with felonies, this court had inclined to listen favorably to applications of this sort. Since that time, it is impossible that a party on his trial for such an offense, if he choose to avail himself of all his legal rights, can have an unfair trial, unless it be by the perjury of persons put upon him as jurors, or the palpable misconduct of the officers of the law.' In the case of *Lovett* v. *State,* 60 *Ga.* 257, it was held that 'with the means afforded by law for obtaining impartial jurors, and for changing the venue if necessary, the continuance of a criminal case on the ground of popular excitement is not essential to a fair trial; especially after the lapse of more than three months from the commission of the homicide.' In the case of *Cox* v. *State,* 64 *Ga.* 403 [37 Am. R. 76], it is said: 'With regard to public excitement and prejudice, we see nothing to take this case out of the general rule long since laid down here authoritatively, to the effect that these have ceased to be cause for a continuance.' To the same

effect see *Brinkley* v. *State,* 54 *Ga.* 371, *Johnson* v. *State,* 48 *Ga.* 116, and *Maddox* v. *State,* 32 *Ga.* 582."

In *Taylor* v. *State,* 135 *Ga.* 622 (70 S. E. 237), it was held: "A continuance will not be granted simply on the asseveration of the accused, without any supportive evidence, that because of public excitement he will not be able to have a fair trial." In *Biggers* v. *State,* 171 *Ga.* 596 (156 S. E. 201), it was held: "There was no abuse of discretion upon the part of the court in refusing a change of venue upon application made therefor, or in refusing a continuance of the case." In the opinion it was said: "The court did not err in overruling the motions for a change of venue and for a continuance. In passing upon both of these motions the court exercised a sound discretion, and it does not appear that that discretion was abused. The publication of the article in a newspaper of wide circulation in the county and the State did not require a finding upon the part of the court that an impartial jury could not be obtained at the time of the trial, that is, on November 5, 1929, a short time after the article in the newspaper referred to was published. And it was not error for the court to refuse to hear evidence offered to show that the former jury was divided upon the question as to whether or not the defendant should be recommended to mercy. The jury trying this case were not concerned with the opinion of the jury that had passed upon the question of the guilt or innocence of the defendant at the first trial. There was no competent proof offered to show that there was prevailing in the county such general excitement and prejudice against the prisoner as would require the case to be postponed to a subsequent date. In the selection of a fair and impartial jury the prisoner was protected by his right to peremptory challenges, and to have the statutory voir dire questions propounded; and if these were not sufficient, the prisoner had his right of challenge to the poll and to have had any juror called to try him put upon the court as a trior and the question of such juror's competency and impartiality thoroughly tested." Viewed in the light of the foregoing decisions, the sworn allegations of public excitement set forth in the motion for continuance were matters of opinion, and did not demand a finding that there was such public excitement as rendered it impossible to afford the defendants a fair trial. There was no abuse of discretion in refusing a continuance on the alleged ground of public excitement.

■ Another ground of the motion to continue complained that the defendants did not have sufficient time to prepare for their defense. The homicide was committed on the 18th of June. A coroner's inquest was held the following day, and the defendants were arrested under a charge of murder and placed in jail in an adjoining county. They consulted an attorney on June 22, and could have employed him finally, but preferred to employ him conditionally dependent upon the outcome of investigation by the grand jury. The grand jury serving for the February adjourned term was reconvened on July 11. The defendants were indicted on that day, and on the same day they finally employed the attorney and paid his fee. The special term convened on July 14, and the defendants were put on trial. The controlling question was as to identity of the person who committed the murder. There were no unusual or intricate questions of law or fact. The attorney testified that "the defendants believe . . that witnesses can be found to prove . . that one of the parties who are charged with the murder of the deceased held malice toward him over a period of time, continued up until the commission of the homicide," but that he could not name any such witness. There was no evidence of the basis of such belief, or as to which of the persons charged with the murder entertained malice against the deceased. This ground of the motion for a continuance comes within the general rule that the time to be allowed counsel to prepare for trial is in the sound discretion of the trial judge; and his discretion will not be interfered with by this court unless abused. Under the facts there was no abuse of discretion in this instance. *Charlon* v. *State,* 106 *Ga.* 400 (32 S. E. 347); *Kelloy* v. *State,* 151 *Ga.* 551 (107 S. E. 488); *Waters* v. *State,* 158 *Ga.* 510 (4) (123 S. E. 806); *Gower* v. *State,* 166 *Ga.* 500 (143 S. E. 593). The case differs in its facts from *Sheppard* v. *State,* 165 *Ga.* 460 (141 S. E. 196), *Maddox* v. *State,* 32 *Ga.* 581, and *Blackman* v. *State,* 76 *Ga.* 288, holding that under the facts of the case the trial judge abused his discretion in refusing a continuance.

■ Another ground of the motion for a continuance was, that, prior to the call of the special term and of the final employment of the attorney, an important case in which the movants' attorney was an attorney and also a party was assigned for argument to be heard in the Court of Appeals on July 17, and that movants "do not

believe that their attorney can do justice to their cause if said attorney is forced from necessity to rush through the trial of this case in order that it may be completed in time for said attorney to be present before the Court of Appeals on July 17th, 1930. . . It will require not less than a week to complete a fair trial of these defendants in the event all of the witnesses now under subpœna by the State and these defendants are examined." The attorney's connection with the case and its assignment in the Court of Appeals was shown. It was a matter of opinion, however, as to the time necessary for proper trial of the case under consideration. It will not be presumed that the trial court would unduly speed the trial or fail to afford the attorney opportunity to appear before the Court of Appeals, if a conflict of engagement in the two courts should arise. There was no abuse of discretion in overruling this ground of the motion for a continuance.

■ The challenge to the array was as follows: "Come now the above-named defendants, . . and challenge the array of the jury about to be put upon them . . and say that said array should not be put upon them, for the following reasons, to wit: 1. Said array was not drawn to serve at this special term of this court, but was drawn to serve at the February adjourned term, 1930, of this court, which latter term has expired. 2. Said array so drawn for the February adjourned term, 1930, of this court has not been ordered by the judge of this court to serve at this special term of this court. 3. No precept was issued to the sheriff of this county or his deputy to cause said array to be summoned to serve at this special term of this court, and it was not fairly or properly impaneled. 4. Said array was not summoned by the sheriff or his deputy ten days before this special term of this court convened, as required by sections 827 and 856 of the Penal Code of Georgia, 1910, as shown by the minutes of this court on page 598 of Book 26 of the minutes of the superior court of Polk County, which shows that said array was drawn on July 5, 1930, less than ten days before this special term convened." At the time the paper was filed the judge made the following order: "The following named persons were drawn to serve at the February adjourned term of Polk superior court, pursuant to and in conformity with an order passed by the judge thereof calling a special term of Polk superior court. Said order dated July 5th, 1930, and entered on

the minutes page 598, is hereby made the order of the court calling said special term. 7/14/30." Immediately following the order was a list of names, which was headed: "The following named persons were drawn to serve at the February adjourned term of Polk superior court." This was marked: "Filed in Office, August 11th, 1930," and was signed by the clerk. The sheriff testified that he received the list of names on July 7, and on the same day summoned them by mail. At the conclusion of the sheriff's testimony the judge overruled the challenge to the array.

The Penal Code, § 796, declares: "The judges of the superior courts may, in their discretion, hold adjourned terms of said courts in every county within their respective circuits, when the business requires it to close the dockets, and may, in the exercise of a sound discretion, cause new juries to be drawn for the same, or order the juries drawn for the regular term·to give their attendance upon such adjourned terms; and such judges are authorized to hold special terms of said courts for the trial of criminals or for the disposition of civil business, either or both, in any county of their circuits, at discretion, and to compel the attendance of grand or petit jurors, either of a previous term, or to draw new jurors for the same, according to the laws now in force." This section of the Code is in the language of section 1 of the act approved December 24, 1890 (Acts 1890-1891, vol. 1, p. 74). The language, "according to the laws now in force," refers to former statutes as codified in the Code of 1882. That Code contains among others, the following: "3910(d). Grand and traverse juries, how selected. Commissioners in each county in this State, appointed by the presiding judge of the superior court, and constituting the jury commissioners, shall revise the jury list, and shall select from the books of the tax-receiver upright and intelligent men to serve as jurors, and shall write the names of the persons so selected on tickets, as required by law. It shall be the duty of said jury commissioners to select from these a sufficient number, not exceeding two fifths of the whole number, of the most experienced, intelligent, and upright men, to serve as grand jurors, and the jurors left after such second selection shall constitute traverse jurors. § 3910(e). Jury-boxes, how made up. Said jury commissioners shall place the tickets containing the names of grand jurors in a box to be provided at the public expense, which box shall contain

apartments marked number one and two, from which grand jurors shall be drawn as now provided by law, and said jury commissioners shall place the tickets containing the names of traverse jurors in a separate box, to wit, the jury box now in use, or other similar box, from which traverse jurors shall be drawn as now provided by law. § 3911. Grand jurors, how drawn. The judges of the superior courts at the close of each term, in open court, shall unlock said box, and break the seal, and cause to be drawn from apartment number 'one' not less than eighteen nor more than thirty names to serve as grand jurors at the next term of the court; all of which names, as well as the names drawn to serve as petit jurors, as hereafter provided for, shall be deposited in apartment number 'two;' and when all the names shall have been drawn out of apartment number 'one,' then the drawing shall commence from apartment number 'two' and the tickets be returned to number 'one,' and so on alternately; and no name so deposited as aforesaid in said box shall, on any pretense whatever, be thrown out of said box or destroyed, except when it is satisfactorily shown to the judge that the juror is dead, removed out of the county, or otherwise disqualified by law." "§ 3931. . . Petit jurors, how selected, drawn and summoned. Petit jurors are selected in the manner and by the authority, and their names are placed in a box, as provided in section 3910 (d), and at the same time, and in the same manner that grand juries are drawn the judge shall draw out of the jury-box thirty-six names to serve as petit jurors for the trial of civil and criminal cases, and such petit jurors are summoned in the same manner as is provided in this Code for summoning grand jurors."

In *Williams* v. *State,* -69 *Ga.* 11-27, referring to the precept mentioned in the foregoing sections of the Code, this court said: "Under our law, it [precept] is a very simple thing. It must contain the names of the persons drawn, and that is all the statute seems to require. Code, § 3913. When the clerk hands that list to the sheriff, it is his duty to serve the persons named. We presume this was done. 34 *Ga.* 270. Nothing to the contrary appears of record here. It is doubtful whether it be important to enquire about such matters at all. They relate, it appears, not to the securing of a fair and impartial jury for the defendant as much as to the mode of bringing the jurors to the court, and equalizing,

by rotation, their duties among themselves. Such seems to be the ruling in 20 *Ga.* 60. See also 14 *Ga.* 43, and dissenting opinion in 57 *Ga.* 427." In *Rafe* v. *State,* 20 *Ga.* 60, it was said: "The statutes for selecting jurors, drawing and summoning them, form no part of a system to procure an impartial jury to parties. They establish a mode of distributing jury duties among persons in the respective counties, subject to that kind of service, and of setting apart those of supposed higher qualifications for the most important branch of that service; they provide for rotation in jury service; they prescribe the qualifications of jurors, and the time and manner of summoning them, and are directory to those whose duty it is to select, draw, and summon persons for jurors." This doctrine was referred to approvingly and applied in *Woolfolk* v. *State,* 85 *Ga.* 69(5) (supra), in *Rawlings* v. *State,* 163 *Ga.* 406-419 (136 S. E. 448), and in *Pollard* v. *State,* 148 *Ga.* 447-453 (96 S. E. 997). In the last case it was said: "It is . . said that statutes regulating the selection, drawing, and summoning of jurors are intended to distribute jury duties among the citizens of the county, provide for rotation in jury service, and are merely directory. This is undoubtedly true. See *Rafe* v. *State,* 20 *Ga.* 60. Obviously, however, a disregard of the essential and substantial provisions of the statute will have the effect of vitiating the array. In the *Rafe* case, supra, it was ruled that such statutes, that is, statutes regulating the selection, drawing, and summoning of jurors, 'are no part of a regulation to secure to parties impartial juries.' It would perhaps be more accurate to say that such statutes are not primarily designed to secure to parties impartial juries." In the instant case the term was called as a special term under the provisions of the Penal Code, § 796. At the time of calling the term the judge drew the petit jurors to serve at the term which was called. The clerk furnished a list of the jurors so furnished to the sheriff to be summoned. This was the precept. The fact that the caption of the list referred to the term as the "February adjourned term" did not render the precept illegal. At most it was a misnomer that could not affect the case. The sheriff knew the term intended, and summoned the jurors who appeared at the appointed time. Nor did it affect the case that the jurors were summoned by mail, and less than ten days before the beginning of the special term. The manner and time of

service upon the jurors are matters that go to the necessities and convenience of the court and jurors, and have no bearing on the question of affording the defendants a fair trial. The judge did not err in overruling the challenge to the array.

■ The first special ground of the motion for a new trial sets forth the following: "During the argument of the case by Hon. Homer Watkins for the State the following colloquy occurred:

'Mr. McRae: The defendants object to the statement made by counsel for the State, to the effect that the large crowds of people who have attended this court under these extraordinary conditions—

'Mr. Watkins: I didn't say that.

'Mr. McRae: I beg your pardon—have come here expecting the jury to do justice in this case, on the ground that such statements are made solely for the purpose of bringing to the minds of the jury the fact that numerous people have attended this trial, and of the great public excitement over this trial, and made for the purpose of influencing the jury against these defendants by referring to the presence of a large body of citizenship of this county; and I move that a mistrial be declared in this case by virtue of said remarks, which is highly prejudicial to these defendants.

'Mr. Watkins: In the first place the remarks he has set forth here are not the remarks I made, and whatever remarks I did make I freely withdrew them and apologize to the court and jury for having uttered them, as not actuated by any improper motive at all. The remarks I did make was wholly different from what my brother has set forth. I want to put in this as the remarks made to the jury: The great number of people in attendance at this trial are not here through vengeance, not through hatred or envy or with any hostile intention toward the accused, but merely to see whether or not justice will be meted out and the plaintiffs and their families protected. I withdraw those remarks. Those are the remarks I made; I withdraw them and I am sure they will have no effect on the jury.

'Mr. McRae: I object to the remarks admitted to have been made by counsel, on the grounds that they were made for the purpose of prejudicing the minds of the jury against these defendants. It is wholly unfair to the defendants; and therefore I move for a mistrial on the grounds that they have prejudiced the minds of the jury against the defendants.

'Mr. Watkins: I withdraw all remarks with reference to that, and apologize to the court and the jury and the accused, and the jury will be instructed not to consider them at all.

'The Court: I will take care of that; you just handle what you want to do about it. It becomes the duty of the court in the trial of the case to guard the arguments and pass on the motion that has been made in this case by counsel for the defendants. In the first place, the remarks having been withdrawn and apologized for by the counsel for the State, I overrule the motion to declare a mistrial, and I desire to go further than that, in order that a fair trial may be had, and that one may be had upon the law and the evidence in the case, eliminating everything else; and I now instruct you, gentlemen, that any arguments about people coming to court or what they think about the trial or what they wish about it is absolutely irrelevant and has nothing to do with this case, and is entirely withdrawn and ruled out, and you are instructed to give it no weight whatever. I am making this emphatic, because under the ruling of the Supreme Court, and my sense of what is proper, I have to do this; and as far as I am able to do it by instructions to you, that is withdrawn; and if censure should be used, I now reply to that; in view of the fact that it is withdrawn, I do nothing more than to say that it is improper, irrelevant, and having nothing to do with the case, and you are to give it no consideration whatever.'

"Movants say that the court erred in refusing to declare a mistrial in said case as requested by their attorney, because the statements made by counsel for the State as above set forth in the hearing of the jury greatly prejudiced the minds of the jury against the movants and influenced them in finding against the movants in said trial, and that such remarks were such as would naturally tend to influence the minds of the jury against the movants, notwithstanding the apology of counsel and the instructions of the court, and that said remarks rendered it necessary, to the ends of justice, that a mistrial be declared, and that the failure of the court to declare a mistrial in said case resulted in the movants being convicted upon a trial that was not fair and impartial, and that they should be granted a new trial."

The remarks of the attorney were improper; but in view of their withdrawal and the apology of the attorney and the remarks of the court, there was no error in refusing to grant a mistrial.

■ The second special ground of the motion for new trial sets forth the following: "Upon the resumption of argument by counsel for the State, another motion was made by counsel for the defendants, as follows:

"Mr. McRae: I move for a mistrial in this case, on the grounds that counsel for the State is arguing that 'here is the widow, sitting here with a seven-year-old invalid on her lap.' There is no evidence of that. That is also improper. There is no evidence that there is such a child, and the argument is improper.

"Mr. Watkins: I was under the impression that Mrs. Jones testified that there were two children.

"Mr. McRae: There isn't anything about it being an invalid.

"Mr. Watkins: I withdraw that remark.

"The Court: Gentlemen of the jury, I instruct you again that you are to decide this case according to the law and the evidence, and all other matters are irrelevant and improper; and I shall from now on deal with this matter on my own motion if counsel gets out of the record. I shall not wait for counsel to do it, and I shall ask counsel to argue from the law and the evidence and nothing else. That is the kind of a trial I am trying to administer in this case. That is ruled out, about the child and the widow; it has nothing to do with the case.

"Mr. Watkins: Does your honor hold that I can not refer to the fact that there is a widow?

"The Court: I am dealing with it as a whole, not in part. I am saying that the fact that there is an invalid child is improper, I think. Argue the case according to the evidence.

"Movants say that the court erred in failing to declare a mistrial upon motion of their attorney, based upon the remarks of counsel for the State as above set forth. That said remarks were made for the purpose of prejudicing the minds of the jury against movants, and did prejudice their minds against them, and resulted in movants being convicted upon a trial that was unfair; and movants say that they are entitled to a fair and impartial trial, and this they have not had."

For reasons stated in the preceding division there was no error in overruling this motion for a mistrial.

■ The evidence was sufficient to sustain the verdict against both defendants, and there was no error in refusing a new trial.

*Judgment affirmed.  All the Justices concur, except Russell, C. J,. who dissents.*