## MOORE *v.* STATE

[No. 147, October Term, 1951.]

*Decided April 4, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Ellis Levin,* with whom was *Maurice T. Siegel* on the brief, for the appellant.

*Kenneth C. Proctor, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General, Anselm Sodaro, State's Attorney for Baltimore City,* and *J. Harold Grady, Assistant State's Attorney,* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

Susie Moore was convicted of violation of the lottery laws by a jury in the Criminal Court of Baltimore and sentenced to not more than nine months in the Reformatory for Women and a fine of $1,000. The appeal raises two questions, whether lottery slips taken from a certain automobile under a search warrant were properly admitted in evidence, and whether the court erred in refusing to direct a verdict for the appellant under the second and third counts of the indictments upon motion made at the conclusion of the whole case.

The search warrant was duly issued on August 9, 1951 to Captain Emerson, based on observations over a prior period, directing him to search a Plymouth coupe bearing Maryland license tags numbered 74-481 titled in the name of Mary Larkins. The warrant was executed the same day. As the officers approached the car, a Negro was seen to enter it and place a brown paper bag on the seat. When the officers showed him the warrant he ran and escaped. A search of the car revealed thirty-five lottery slips for August 8, covering 356 numbers with an aggregate play of $23.53, and 512 lottery slips for August 9, covering 4,547 numbers with an aggregate play of $783.73. The registration card was found in the car, and inquiry of the Commissioner of Motor Vehicles established that the automobile was titled in the name of Mary Larkins.

The officers interviewed Mary Larkins, and she told them the car was not hers but belonged to Susie Moore. The officers then went to appellant's home, 3024 Auchentoroly Terrace. Shortly after they arrived, appellant drove up in an automobile bearing Maryland license tags numbered 74-483. Appellant admitted that the Plymouth coupe, license number 74-481 belonged to her. They told her they were looking for a Negro who had been operating the car that day. She told them his name was Carlos, but that she did not know his last name. She undertook to bring him to the Northwestern Police Station the next morning. She appeared there the next morning with Carlos Cooper, who admitted he had been driving the car, and subsequently pleaded guilty. Mary Larkins pleaded not guilty and was acquitted.

In the trial of the instant case the appellant took the stand and admitted that she had known Cooper's full name at the time of Captain Emerson's inquiry, had known him for years, and knew where he lived. He had worked for her. She admitted that she told Captain Emerson it was her car that Cooper had been driving on August 9, 1951. She said she bought it in 1948 and had it titled in Mary Larkins' name because she couldn't get insurance for it; the insurance company turned her down. She had never owned a car before and had never had an accident, or any judgment against her. Mary Larkins signed the applications for license tags and twice signed applications for loans on the car, including a $500 loan in 1950, which were duly paid off by the appellant. The appellant paid for the 1951 license tags and the insurance premiums. She testified, however, that in July, 1951, she sold the car to Carlos Cooper for $600.00, because "she needed the money". Cooper paid her $50.00 down. She had no receipt for the payment; she did not change the insurance; there was no written agreement, just an understanding that Cooper would pay her $15 or $20 a month. She had not received any payments except the $50. Cooper was not

produced to substantiate these statements. She did not "think about" getting another loan on the car or selling it to a dealer. She didn't know what the car was worth on the second-hand market. The automobile bearing license number 74-483 belonged to her husband. She denied any knowledge of the purpose for which Cooper had been using the car, or any familiarity with lottery operations.

The objection to the testimony of Captain Emerson as to what he found in the car is without merit. It was on the ground of "relevancy". The lottery tickets would have been admissible as "implements of crime". *Edwards v. State,* 194 Md. 387, 402, 71 A. 2d 487, 494; *Freedman v. State,* 195 Md. 275, 285-287, 73 A. 2d 476, 481. Captain Emerson's testimony was a mere summary of the primary evidence, which was available for examination although not formally offered. *Wharton, Criminal Evidence,* §§ 409, 412. The appellant now complains, however, that at the time the testimony was offered no connection of the appellant with the Plymouth coupe had been shown, and the State had made no offer to follow up the testimony. It is sufficient to observe that no objection was made on that ground. In any event, since the State did subsequently show a connection, there is no reversible error.

In dealing with the second question, the appellant contends that the evidence that lottery slips were found in the car is not legally sufficient to show that the appellant "unlawfully did keep a certain place, to wit: an automobile, for the purpose of selling lottery tickets * * *", under the second count, or "unlawfully and knowingly did permit a certain automobile * * * of which [she was] then and there the owner, then and there to be used as a place for selling lottery tickets * * *", under the third count. She contends that the evidence would only support a charge of possession, not of sale. We think, however, that the tickets themselves are evidence of prior sales, and that a permissible inference may be drawn from the testimony that the automobile was kept

and used, by Cooper at least, for the purpose of consummating such sales. Cf. *Meade v. State,* 198 Md. 489, 493-494, 84 A. 2d 892, 894; *Lee v. State,* 198 Md. 383, 389, 84 A. 2d 63, 65.

The appellant further contends that there was no legally sufficient evidence to connect her with the unlawful use by Cooper. We think there was abundant testimony to support a finding that she was still the owner of the car. The jury was not bound to believe her improbable story of a sale, particularly in view of her pretrial admissions, the total absence of corroborating documents or testimony, and other circumstances tending to impeach her veracity. There is, of course, no direct testimony of her participation in the lottery, but it is not necessary in order to support a conviction under these counts that she be shown to be a principal; all that need be shown is *scienter,* or in other words, that she was aware of, or permitted the unlawful use by Cooper, in what was obviously a large and lucrative operation. We think a permissible inference may be drawn that she knew all about Cooper and his business. She knew where he lived, for she produced him as the driver of her car, even though Captain Emerson told her that he was wanted for lottery. She admitted Cooper had worked for her, and there was no suggestion that their relations were only that of gratuitous bailor and bailee. On the contrary, her defense was a lack of ownership by reason of a sale, which the jury obviously disbelieved. If her testimony as to the sale was so improbable as to justify disbelief, her testimony as to lack of knowledge of the unlawful use was equally so. As stated in the recent case of *Hayette v. State,* 199 Md. 140, 145, 85 A. 2d 790, 792: "Ordinarily disbelieving evidence is not the same thing as finding evidence to the contrary. But on questions of *scienter* reason for disbelieving evidence denying *scienter* may also justify finding *scienter. Shelton v. State,* 198 Md. 405, 411-412, 84 A. 2d 76, 80."

*Judgments affirmed, with costs.*