SHOCKLEY ET AL. *v.* STATE

[No. 56, September Term, 1958.]

*Decided January 19, 1959.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Raymond D. Coates* and *Vaughn E. Richardson,* with whom was *Charles E. Edmondson* on the brief, for the appellants.

*Stedman Prescott, Jr., Deputy Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General,* and *Daniel T. Prettyman, State's Attorney for Worcester County,* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

Two brothers, Harold Edward Shockley, aged 23, and Leonard Melvin Shockley, aged 17, were jointly indicted by the Grand Jury of Worcester County for the murder of Sarah Hearne, a storekeeper. The case was removed to Dorchester County and tried before three judges, without a jury. Both defendants were found guilty of murder in the first degree. Leonard was sentenced to death, and Harold to life imprisonment.

The basic facts are virtually conceded. On the morning of January 16, 1958, a cold, cloudy day, the defendants left their home, where they lived with their parents, at Omar, Delaware, and drove to Snow Hill. They were accompanied by a sister. The trip was made in a 1951 Chevrolet that had been loaned to them by a dealer while the motor of their mother's automobile was being repaired. The sister was left to visit at the home of a friend. At about 1:00 P.M. Leonard suggested that they drive to Boxiron, a small village in Worcester County, in the vicinity of which they had lived before the family moved to Delaware. They came to a country store, and Leonard, who was driving, backed in alongside the store. Leonard was wearing a dagger or sheath knife on his belt. Mrs. Hearne, the storekeeper, came from her home, about 95 feet from the store, to wait on them.

Shortly thereafter a witness, Clarence W. Bishop, who lived in the neighborhood, walked up to the store and noticed the Chevrolet parked beside it. He opened the door and entered the store. He saw Harold (whom he had known before) standing behind the counter, toward the rear of the store, and heard a scuffle at another point behind the counter. He ran out and reported to another neighbor that it "sounded like somebody was on Sarah down the store." When he and the neighbor returned, the automobile was gone. In the meantime, the victim had made her way to her home, where she fell dead. The police found her body with her pedal pushers down from her waist and the front of her underpants torn out. She had been stabbed several times in the back and breast, and her throat had been cut. Investigation showed that the cash register in the store had been tampered with

and jammed. A pool of blood marked the place where she had first fallen, and a trail of blood led to her home.

The police arrested the brothers at their home that same evening. They were taken to the police barracks at Georgetown, Delaware, where they each made statements out of the presence of the other. These statements were duly offered in evidence, and it is not contended that they were involuntary. According to Leonard, he and his brother planned to rob the store on their way to Boxiron, and they both attacked Mrs. Hearne in an attempt to rob her. He said Harold told him to grab her. Leonard admitted that he tried to rifle the cash register but could not get it open. He admitted that he had stabbed the victim and cut her throat. According to Harold, Leonard went into the store to buy cakes and soft drinks, but Harold remained outside in the automobile, until he heard what he described as "scrambling around in there." He went in to investigate and found Leonard had the victim on the floor between the meat case and the counter with her pedal pushers down. He saw Leonard cut her throat. He then tried to pull Leonard off the victim, and they both fled. He claimed he did not know, when Leonard went into the store, that Leonard had any intention to rob or rape the victim. Harold admitted that they drove home by back roads and did not go back to Snow Hill for their sister. Along the way, they each discarded articles of clothing which contained extensive blood stains identified as of the same type as that of the victim. There were also blood stains in the right front seat of the Chevrolet.

In addition to these statements to the police, there were put in evidence two reports of mental examinations made upon petition of the defendants, pursuant to an order of court, upon stipulation that they "be admitted in evidence with the same effect as if the same had been introduced in evidence by the defense upon the production of the said Dr. Jacob Morgenstern as a witness." These reports, aside from extensive background material relevant to the psychiatric findings, contained statements which followed the same pattern as the previous statements. It appeared that Leonard had been out of work for about three weeks before the murder. In this

statement Leonard denied that he had discussed the attempted robbery with his brother. He said he had drunk "almost a pint of wine" that morning. He had money in his pocket, and there was no reason for him to attempt the robbery. The report definitely stated the examiner's opinion that the accused had sufficient mentality to meet the Maryland tests of legal responsibility.

The report as to Harold was to the same general effect. Harold said that he was surprised when his brother passed the store, turned around, and passed the store twice, before stopping there, and asked him what he had in mind. Leonard replied: "I am just riding." Harold admitted to a previous conviction of larceny and that he was only released on probation a few days before the murder. There is no contention here that either of the brothers was not legally responsible for their acts. They contend that in each case the evidence was legally insufficient to support the verdicts. No contentions are pressed as to rulings on the evidence. Neither defendant took the stand.

Maryland Rule 741 c provides that when a criminal charge has been tried by the court, without a jury, this Court on appeal may review both the law and the evidence to sustain a conviction; but the rule also provides that the verdict shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. We think it is perfectly clear that Leonard killed the victim in an attempt to perpetrate a robbery or a rape, so that as to him the verdict of first degree murder must stand. See Code (1957), Art. 27, sec. 410; *Stansbury v. State,* 218 Md. 255, and cases cited. His own confession and admissions, corroborated by other evidence in the case, point unmistakably to his guilt.

The case against Harold requires a more extended discussion. It is conceded, and the trial court ruled, that any statements in Leonard's confession, made out of the presence of Harold, could not be used against Harold in weighing the sufficiency of the evidence against him. See *Peters and Demby v. State,* 187 Md. 7, 14, and *Jackson v. State,* 180 Md. 658. It is contended that there was no evidence, apart from

these statements, to show that Harold participated in an attempted perpetration of robbery or rape. We do not agree. We think the evidence would at least support an inference that Harold knew of, and actively participated in, an attempt to rob by forcing the cash register. The testimony of the police officers shows that the cash register had been tampered with and jammed, presumably by one or both of the accused. It might be inferred that this attempt was made prior to, or contemporaneously with, the assault on Mrs. Hearne by the armed brother, because they evidently fled as soon as the victim's throat was cut, knowing that Bishop had seen them and had run off to give the alarm. It would strain credulity to believe that Harold, the older man, was simply an innocent bystander. His story, that he sat outside in the car until he heard a scuffle in the store, is inherently improbable. It was a cold day, and the store windows were closed. Bishop heard no noise until he opened the door, and he then saw Harold behind the counter while a scuffle was taking place, and doing nothing to prevent it. The inference is that Harold entered the store with his brother, and not afterwards, and that he was present when the initial assault took place and the attempt to force the cash register was made. It may be inferred from the fact that neither of the brothers had been employed for some time, that both were short of funds. It is difficult to believe that Harold would not have shared in the loot, if the cash register had not jammed so that even the police officers could not open it without further instruction. Knowledge of the brother's purpose to rob is not the exact equivalent of an active participation in the attempt to rob, but knowledge plus the other circumstances of this case permit an inference that Harold aided and abetted in a concerted effort to obtain money. Even the position of the car suggests that it was placed in a position for a rapid flight. The drive past the store on two occasions also suggests a "casing" operation. In addition, we have the facts that Harold's clothing was covered with the victim's blood, that he made no effort to help the victim, and that he went off with his brother by a circuitous route, discarding and concealing the incriminating garments.

Exculpatory statements by an accused may be disbelieved by the triers of the facts. *Kier v. State,* 216 Md. 513, 519; *Berry v. State,* 202 Md. 62, 66. We noted in *Wild v. State,* 201 Md. 73, 77, that "knowledge may be inferred from circumstances, even where there is positive denial. *Moore v. State,* 199 Md. 676, 87 A. 2d 577; *Shelton v. State,* 198 Md. 405, 413, 84 A. 2d 76, 80. As we said in *Hayette v. State,* 199 Md. 140, 145, 85 A. 2d 790, 792, 'on questions of scienter reason for disbelieving evidence denying scienter may also justify finding scienter.'" See also *Brown v. State,* 200 Md. 211, 215, and *Ferraro v. State,* 200 Md. 274, 278. We noted in *Chisley v. State,* 202 Md. 87, 109, that "Evidence of the movements and actions of the accused after the killing and before the arrest may be competent evidence."

We think the cases of *Coleman v. State,* 209 Md. 379, and *Watson v. State,* 208 Md. 210, relied on by the appellant, Harold Shockley, are distinguishable. In the *Coleman* case, we held that there was evidence to support the trial court's finding that Loretta Cox, a young girl who sat outside in a car while a breaking and entering occurred, had no knowledge that a crime was planned, and hence was not an accomplice. In the *Watson* case, we likewise held that the trial court was not clearly wrong in finding that a female witness to the murder of a newborn child was not an accomplice. In each case we gave full weight to the findings of the triers of the facts. We find nothing to the contrary in *Judy v. State,* 218 Md. 168. It may well be that in the instant case Harold's mere presence would not be sufficient to make him a participant in the killing. The trial court stated that they were not satisfied that he participated in the actual killing, or that he knew a killing was to take place. They found, however, that he participated in an attempt to perpetrate a robbery, and that is enough, under the statute, to support a verdict of guilty of murder in the first degree. We think there was sufficient evidence, or inferences from evidence, to support the finding that Harold participated in the attempted robbery, and we cannot hold that the trial court was clearly wrong in so finding.

*Judgments affirmed.*

HORNEY, J., dissenting in part, filed the following dissenting opinion.

The majority of this Court, in affirming the conviction of Harold Edward Shockley (the defendant or Harold) of murder in the first degree, based its conclusion on the fact that the trial court was not clearly wrong when it found there was sufficient evidence, or inferences from evidence, to support the finding that Harold participated in the attempted robbery of Sarah Hearne (the victim).

I agree with the majority that the evidence was sufficient to sustain the conviction of the younger brother, Leonard Melvin Shockley (Leonard), of murder in the first degree for the killing of the victim in an attempt to perpetrate a robbery or a rape, but I cannot agree that the evidence was legally sufficient for the trial court to have found Harold guilty of murder in the first degree.

The trial court, in announcing its verdict, stated that it believed the two brothers had discussed their plans on the way from Snow Hill to Boxiron and what they were going to do when they got there; and that Harold, as well as Leonard, knew they were going to Boxiron with criminal intent—certainly with intent to rob, and possibly with an intent equally as bad or perhaps worse. The court was unable to accept the statement of the older brother that he went in the store with the sole purpose of preventing the younger brother from committing a crime. In sentencing Harold, although the court was satisfied of his guilt under the provisions of Code (1957) Art. 27, § 410, it was not satisfied that he had participated in the actual killing of the victim or knew the killing was to take place, and for that reason sentenced him to life imprisonment instead of death.

Maryland Rule 741 c provides that when a criminal charge has been tried by the court instead of a jury, this Court, upon appeal, may review both the law and the evidence to determine whether in law the evidence is sufficient to sustain the conviction. The rule also provides that the verdict of the trial court shall not be set aside on the evidence unless it is clearly erroneous, and due regard must always be given to

the opportunity of the trial court to judge the credibility of the witnesses. But if there is *no* evidence, upon which the trial court could find a defendant guilty, then it is the duty of this Court to rule that the lower court was wrong, and set the verdict aside. What then is the state of the record in this case?

Harold concedes that the credibility of the witnesses is not involved. He insists, however, that, if the testimony of every witness in the case, which was properly in evidence, is accepted as true, it is still not sufficient to convict him of murder. He further says that the trial court, in applying the established rules of law, could not have been fairly convinced, beyond a reasonable doubt, of his guilt. I agree.

Other than the statement made by Leonard in his confession taken out of the presence of Harold—that he and his brother planned to rob the victim and that both had attacked her for that purpose—which the trial court properly ruled was not admissible in evidence against Harold (*Peters and Demby v. State,* 187 Md. 7, 48 A. 2d 586 [1946]; *Markley v. State,* 173 Md. 309, 196 A. 95 [1938])—there is no evidence that the brothers had planned a robbery on the way to Boxiron. Since the trial court found Harold guilty under the provisions of Art. 27 § 410, *supra,*—which provides, in part, that "[a]ll murder which shall be committed in the perpetration of, or attempt to perpetrate, any * * * robbery * * * shall be murder in the first degree"—the real question is whether there was any evidence, or inferences from evidence, from which the court could properly conclude that Harold participated in the attempt to perpetrate a robbery.

The majority opinion states that the "evidence would at least support an inference that Harold knew of, and actively participated in, an attempt to rob by forcing the cash register." The State Police testified that the cash register had been tampered with and was jammed, but other than the fact that Harold was present at the scene of the crime there was no evidence to prove that he had participated in the attempt to rob any more than he had participated in the actual killing of the victim. As stated, there is evidence that Harold was at the scene. He knew a crime was being committed and

did nothing to stop it. He fled the scene in haste without notifying anyone that a crime had been committed. And, in his flight by a devious route, he discarded his blood-stained clothing. But none of these, standing alone or collectively, is sufficient to show that Harold participated in the attempt to perpetrate robbery.

Although the presence of Harold at the scene of the crime was one of the factors the court was entitled to consider in arriving at its verdict, his mere presence there did not in itself make him a principal or an accomplice. *Judy v. State,* 218 Md. 168, 146 A. 2d 29 (1958) ; *Watson v. State,* 208 Md. 210, 117 A. 2d 549 (1955) ; 2 Wharton, *Criminal Evidence* § 451 (12th ed. 1955). In *Levering v. Commonwealth,* 132 Ky. 666, 117 S. W. 253, 257 (1909), it was said:

> "Mere presence or acquiescence in, or silent consent to, is not, in the absence of a duty to act, legally sufficient, however reprehensible it may be, to constitute one a principal, or an accessory, or an aider and abettor, or an accomplice * * *."

See also 1 Underhill, *Criminal Evidence* § 16 (5th ed. 1956) ; *State v. Tippett,* 244 Iowa 1350, 60 N. W. 2d 538 (1953) ; *State v. McComas,* 85 Mont. 428, 278 P. 993 (1929) ; *Gower v. State,* 166 Ga. 500, 143 S. E. 593 (1928) ; *State v. Altwatter,* 29 Idaho 107, 157 P. 256 (1916) ; *People v. Hrdlicka,* 344 Ill. 211, 176 N. E. 308 (1931) ; *Hicks v. State,* 126 Tenn. 359, 149 S. W. 1055 (1912).

One who witnesses a crime and does nothing to stop it is not guilty of the crime committed unless he knowingly, voluntarily, and with common criminal intent with the principal offender, participates in the commission thereof, or in some way advocates or encourages its commission. 2 Wharton, *Criminal Evidence* § 448 (12th ed. 1955) ; *Coleman v. State,* 209 Md. 379, 121 A. 2d 254 (1956) ; *Watson v. State, supra,* at p. 219, and the cases therein cited. In the *Coleman* case we said at p. 385:

> "The term 'accomplice' does not include a person who has guilty knowledge, * * *. To constitute one

an accomplice, he must perform some act or take some part in the commission of the crime or owe some duty to the person in danger that makes it incumbent on him to prevent its commission."

Harold's flight from the scene was a circumstance to be considered against him in connection with other evidence tending to show guilt. *Clay v. State,* 211 Md. 577, 128 A. 2d 634 (1957). The movements made by an accused between the time the crime was committed and the time of the arrest are always important as reflecting upon the accused's culpability *vel non. McCleary v. State,* 122 Md. 394, 89 A. 1100 (1914); *Cothron v. State,* 138 Md. 101, 113 A. 620 (1921); *Chisley v. State,* 202 Md. 87, 95 A. 2d 577 (1953). But flight, in and of itself, is not conclusive. *People v. Sanchez,* 35 Cal. App. 2d 231, 95 P. 2d 169 (1939); *Hilson v. State,* 101 Tex. Cr. 449, 276 S. W. 272 (1925). It is not even *prima facie* evidence of guilt. *United States v. Greene,* 146 F. 803 (D. C. Ga. 1906), *affirmed* 154 F. 401, 85 C. C. A. 251 (1907), *cert. den.* 207 U. S. 596 (1907). Moreover, flight, standing alone, is not sufficient to support a conviction. 1 Underhill, *Criminal Evidence* § 16 (5th ed. 1956); *Howard v. State,* 182 Miss. 27, 181 So. 525 (1938); *State v. Adams,* 191 N. C. 526, 132 S. E. 281 (1926); *State v. Marasco,* 81 Utah 325, 17 P. 2d 919 (1933); *Duty v. Commonwealth,* 137 Va. 759, 119 S. E. 62 (1923).

Finally, there was Harold's deliberate attempt to suppress the tell-tale evidence of his presence at the scene or participation in the crime furnished by his blood-stained clothing, which he discarded at several points along the route his brother took to get home. Like the flight of the accused this fact was also a circumstance, which, although not conclusive, could be considered a link in the chain of circumstantial evidence showing guilt. 23 C. J. S. *Criminal Law* § 907a. But, also like flight, the discardation of his clothing is but another circumstance which is neither conclusive nor *prima facie* evidence of guilt, and is insufficient, in and of itself, to support a conviction.

The only evidence against Harold was circumstantial. Of course, there was direct evidence, which Harold did not deny,

that he was present at the scene of the crime, but there was no *direct* evidence that he participated in the attempt to rob or rape or the actual killing, so that his presence at the scene was but another *circumstance* from which an inference could be drawn. When such circumstantial facts as were present in this case—consisting of presence at the scene, knowledge of the commission of a crime, flight from the scene and the suppression of tell-tale evidence—can be reconciled either with the theory of innocence or with the theory of guilt, the theory of innocence must prevail and a conviction cannot be sustained. 23 C. J. S. § 907c, *supra.* See also *Shelton v. State,* 198 Md. 405, 84 A. 2d 76 (1951). Under the evidence in this case Harold could have been present to prevent commission of the crime or present to participate in it. When he saw his brother cut the throat of his victim he could have been stricken dumb and powerless to act or he could have been advocating or encouraging the act. When he fled he could have been fleeing because he was horrified or frightened at what he had witnessed or he could have been fleeing to avoid arrest. And when he discarded his clothing while in flight he could have been trying to rid himself of the taint of feloniously spilled blood or he could have 'been trying to suppress evidence of his presence or participation in the crime. Inasmuch as the facts are as consonant with innocence as they are with guilt, Harold should not have been convicted under the evidence in this case.

In 1 Underhill, *Criminal Evidence* § 17 (5th ed. 1956), it is said:

"Circumstantial evidence which merely arouses suspicion or gives room for conjecture is insufficient. It must do more than raise the mere possibility or even the probability of guilt. It must afford the basis for an inference of guilt beyond a reasonable doubt."

See the rule laid down in the memorandum on motion for reargument in *Edwards v. State,* 198 Md. 132, 81 A. 2d 631 (1951), at p. 157, for meeting the test of the legal sufficiency of evidence in both civil and criminal cases.

There is no doubt that a conclusion of guilt may be based on a reasonable deduction or inference drawn from the facts and circumstances proved or admitted. Such facts and circumstances, however, must not only be *consistent* with guilt, but must be *wholly inconsistent* with innocence. *Commonwealth v. Bardolph*, 326 Pa. 513, 192 A. 916 (1937). Moreover, if there is a hypothesis of innocence, there must be an acquittal, even though an inference of guilt is also possible. *State v. Bulna*, 46 N. J. Super. 313, 134 A. 2d 738 (1957).

Since the record is devoid of evidence, and inferences from evidence, upon which the trial court could have found Harold guilty of murder beyond a reasonable doubt, I am convinced that the judgment as to him should have been reversed and the case remanded for a new trial.